**E.B. (A Fictitious Name), Plaintiff,**

v.

**Deborah T. PORITZ, Attorney General of the State of New Jersey, Charles R. Buckley, Acting Bergen County Prosecutor, and James Mosley, Chief of Police of the City of Englewood, New Jersey, Defendants.**

**Civ. A. No. 2:96 CV00130.**

United States District Court,
D. New Jersey.

Feb. 1, 1996.

Gerald R. Salerno, Aronsohn & Weiner, Hackensack, NJ, for Plaintiff E.B. (Fictitious Initials).

Ronald L. Bollheimer, Deputy Attorney General, Deborah T. Poritz, Attorney General, Department of Law & Public Safety, Division of Law, Trenton, NJ, Judith A. Eisenberg, Special Attorney General, Acting Assistant Prosecutor, Office of the County Prosecutor, Hackensack, NJ, for Defendants.

## *LETTER OPINION*
## *ORIGINAL ON FILE WITH THE*
## *CLERK OF THE COURT*

POLITAN, District Judge.

Dear Counsel:

This matter is presently before the Court on plaintiff E.B.'s application for an Order to Show Cause why defendants [1] should not be enjoined from implementing the provisions of the Registration and Community Notification Laws (hereinafter "Megan's Law"), N.J.S.A. 2C:7–6 to 11, and why a Preliminary Injunction should not issue pending a final disposition of the matter. For the reasons stated herein, plaintiff's application is **GRANTED**, and defendants are **TEMPORARILY ENJOINED** from implementing Tier Two and Tier Three notifications under Megan's Law until further Order of this Court.

## STATEMENT OF FACTS
## & PROCEDURAL
## HISTORY

This case arises out of the inevitable conflict between the differing opinions of the Federal District Court and the New Jersey Supreme Court regarding Megan's Law.

1. Plaintiff has named the following as defendants: Deborah T. Poritz, Attorney General of the State of New Jersey; Charles R. Buckley, Acting Bergen County Prosecutor; and James Mosley, Chief of Police of the City of Englewood, New Jersey.

2. Megan's Law provides for three levels of notification (referred to as "Tiers" in the Attorney General's Guidelines) depending on the risk of re-offense. N.J.S.A. 2C:7–8c. Each Tier carries with it a different notification requirement:

(1) If risk of re-offense is low, law enforcement agencies likely to encounter the person registered shall be notified;
(2) If risk of re-offense is moderate, organizations in the community including schools, religious and youth organizations shall be notified in accordance with the Attorney General's

In 1974, plaintiff E.B. pled guilty in New Jersey Superior Court to three separate offenses of sexual abuse against young boys. For this plea, plaintiff was sentenced to thirty-three years in the Adult Diagnostic and Treatment Center ("ADTC"). Thereafter, on January 21, 1976, plaintiff pled guilty in the Circuit Court of Petersburg, Virginia, to two separate counts of murder. As a consequence of this plea, plaintiff received two concurrent sentences of twenty years' incarceration. This sentence was to run consecutive to the New Jersey sentence.

On June 5, 1979, plaintiff was paroled from the New Jersey sentence, after serving only five years and ten months of a thirty-three year sentence. Plaintiff was then extradited to Virginia to serve the concurrent twenty year sentences for murder. Plaintiff was paroled, slightly over ten years later, by Virginia on June 15, 1989. Currently, plaintiff is free, subject to supervised release by the New Jersey Bureau of Parole until July 23, 2006.

Since his release, plaintiff has been employed, receives aftercare at the ADTC, and attends Church. Plaintiff is also married and owns a home in Englewood, New Jersey. In accordance with Megan's Law, plaintiff registered with the Englewood Police Department on February 25, 1995. Thereafter, on October 24, 1995, plaintiff was notified by the Bergen County Prosecutor's Office that he was classified as a Tier Three Offender.[2] As a result of this classification, the Prosecutor's Office proposed to notify the following

guidelines, in addition to the notice required by paragraph (1) of this subsection;
(3) If risk of re-offense is high, the public shall be notified through means in accordance with the Attorney General's guidelines designed to reach members of the public likely to encounter the person registered, in addition to the notice required by paragraphs (1) and (2) of this subsection.
*Id.*

The New Jersey Supreme Court, in *Doe v. Poritz*, clarified that notification under Tiers Two and Three should only be to organizations that are "likely to encounter the offender." 142 N.J. 1, 29, 662 A.2d 367 (1995). The *Doe* court also recognized that every registrant is subject to at least a Tier One notification, finding that it is not possible to be classified as posing no risk of re-offense. *Id.* at 22, 662 A.2d 367.

of plaintiff's criminal history: all public and private educational institutions and organizations within a one-half mile radius of plaintiff's home, as well as people who reside or work within a one-block radius of plaintiff's home.

In an objection to the proposed notification, plaintiff submitted an application for judicial review of the classification and notification. On December 7, 1995, the New Jersey Superior Court, Law Division, held a hearing on plaintiff's application. On December 18, 1995, Judge Peter Ciolino affirmed plaintiff's classification and permitted notification to all public and private educational institutions and licensed day care centers and summer camps in Englewood, Teaneck, Bergenfield, Tenafly, Englewood Cliffs, Leonia and Fort Lee. Furthermore, the court ordered notification to all residences within a one-block radius of plaintiff's house.

On the same date, plaintiff filed a Notice of Appeal and Emergent Application for a Stay of Notification with the New Jersey Superior Court, Appellate Division. The appellate court granted the Emergent Stay on December 20, 1995. Subsequently, the court affirmed the Law Division on December 22, 1995, but provided that the Stay would remain in effect until December 26, 1995. At the expiration of the court-ordered stay, the parties entered into a Consent Order staying notification until further order of the New Jersey Supreme Court. On January 18, 1996, the New Jersey Supreme Court denied plaintiff's petition for certification of appeal.

Plaintiff filed suit in this Court on January 19, 1996, challenging defendants' ability to proceed with the notification under Megan's Law. Plaintiff requested a Temporary Restraining Order to prevent such notification until final disposition of this case. At a hearing held by the Court on January 22, 1996, the parties entered into a Consent Order which stayed the notification until further Order of the Court. Expedited briefing was required, and the Court heard oral argument on February 1, 1996.

## DISCUSSION

Plaintiff has requested a preliminary injunction which would prevent defendants from disseminating information about his criminal history to the public in accordance with Megan's Law. As the parties have acknowledged, this Court has previously analyzed Megan's Law. *See Artway v. Attorney General of New Jersey*, 876 F.Supp. 666 (D.N.J.1995), *appeal pending*, Nos. 95–5157, 95–5194, 95–5195 (3d Cir.). After an exhaustive review of the law, the Court concluded that the retrospective application of Megan's Law violates the *ex post facto* Clause of the United States Constitution. *Id.* at 692. The Court stands by its previous decision.

Since the Court's decision in *Artway*, however, the New Jersey Supreme Court has had an opportunity to analyze the law and concluded that it is constitutional. *See Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995). Therefore, the issues before this Court are: (1) the effect of the *Rooker–Feldman* doctrine on the Court's ability to exercise subject matter jurisdiction, and (2) whether a Preliminary Injunction should be issued to enjoin defendants from implementing Tier Two or Tier Three notification regarding E.B. under Megan's Law.

## I. Rooker–Feldman Doctrine

The United States Supreme Court has interpreted 28 U.S.C. § 1257 "as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the United States Supreme Court]." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 622, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1988) (citing *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)) (other citation omitted). This principle of law has come to be known as the *Rooker–Feldman* abstention doctrine. Under this rule, " '[i]f the constitutional claims presented to a United States district court are inextricably intertwined' with the merits of a judgment rendered in state court, 'then the district court is in essence being called upon to review the state-court decision. This the district court may not do.' " *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95

L.Ed.2d 1 (1987) (Marshall, J., concurring) (citing *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16). Therefore, the district court lacks subject matter jurisdiction to review the determination of a state court or to evaluate constitutional claims that are inextricably intertwined with the state court's decision. *Port Auth. P.B.A. v. Port Auth. of N.Y. & N.J.,* 973 F.2d 169, 177 (3d Cir.1992) (citing *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16); *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992).

There are two justifications for the doctrine which have been espoused by the Third Circuit. *See Bryant v. Sylvester,* 57 F.3d 308, 312 (3d Cir.1995), *petition for cert. filed,* (Sept. 5, 1995). First, "[j]ust as federal district courts should presume that pending state court proceedings can correctly resolve federal questions [*Younger* abstention doctrine], they should also presume that completed state court proceedings have correctly resolved these questions." *Id.* Second, parties are entitled to finality, "ensuring that litigants do not take multiple bites from the same apple." *Id.* The doctrine "has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion." *Valenti v. Mitchell,* 962 F.2d 288, 297 (3d Cir.1992).

The United States Supreme Court upheld a district court's decision not to abstain under the *Rooker–Feldman* doctrine in *Johnson v. DeGrandy,* — U.S. —, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). In *Johnson,* the plaintiffs, including the United States Department of Justice ("DOJ"), sought review of the Florida Supreme Court's decision that reapportionment under a new state law did not violate the Voting Rights Act of 1965. *Id.,* at — – —, 114 S.Ct. at 2651–52. The action in the Florida court was initiated, as required by the state constitution, by the state attorney general's petition "for a declaratory judgment that the legislature's apportionment plan was valid under federal and state law." *Id.,* at —, 114 S.Ct. at 2652. The *Johnson* Court held that the principles set forth in *Rooker–Feldman* did not bar the DOJ's Complaint in federal court because it was not a party to the state court action and could not litigate the issue. *Id.,* at —, 114 S.Ct. at 2654.

Similarly, the Third Circuit held that the *Rooker–Feldman* doctrine did not bar a district court from presiding over a Voting Rights challenge where "the claims had not been determined by the state court, nor were they inextricably intertwined with a prior state court decision." *Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). Likewise, the Third Circuit declared that when a plaintiff did not have "a realistic opportunity to fully and fairly litigate" his or her federal constitutional claims in state court, *Rooker–Feldman* will not deprive the federal court of subject matter jurisdiction. *Centifanti v. Nix,* 865 F.2d 1422, 1433 (3d Cir.1989).

In the case *sub judice,* plaintiff E.B. was denied an opportunity to meaningfully raise constitutional challenges to Megan's Law. In the state court proceeding, plaintiff was only allowed to challenge his Tier classification and the extent of the proposed notification. The New Jersey Supreme Court, in *Doe v. Poritz,* imposed "procedures designed to assure that the risk of re-offense and the extent of notification are fairly evaluated before Tier Two or Tier Three notification is implemented." 142 N.J. 1, 30, 662 A.2d 367 (1995). The *Doe* court labeled the limited judicial review as a "*summary proceeding* . . . available prior to notification." *Id.* (emphasis added). The New Jersey Supreme Court specified that the trial court could "either affirm or reverse the prosecutor's determination, and in the case of a reversal the [trial] court shall indicate those respects in which the proposed notification does not conform to the laws and the requirements found in [the *Doe* ] opinion." *Id.* at 31–32, 662 A.2d 367. Furthermore, the *Doe* court stated that "[t]he only issue for the [trial] court on the Tier level of notification is the risk of reoffense." *Id.* at 32, 662 A.2d 367.

In conformance with this limited scope of review, the New Jersey Supreme Court has ordered that on appeals "result[ing] from *notification hearings* conducted in the trial courts arising out of [Megan's Law], . . . briefs shall not be filed in such appeals with-

out leave of court. . . ." Order of the Supreme Court of New Jersey, Chief Justice Wilentz (Oct. 18, 1995) (emphasis added). Also, the Order allows the "appeals [to] be disposed of by an order without formal written opinion. . . ." *Id.* It is crystal clear that this is a summary proceeding, limited in nature and scope, which is designed solely to provide review of Tier classification and extent of notification, and nothing more.

In light of these facts, it is evident to the Court that plaintiff E.B.'s constitutional claims were never considered by the state courts because of the narrowness of the hearing provided for by the New Jersey Supreme Court in *Doe.* *See* Transcript of *In the Matter of E.B.* at 9–13 to 21 (N.J.Law Div. Dec. 7, 1995). The instant Complaint does not challenge the state court's ruling as to Tier classification or notification. Rather the Complaint asserts that the application of Megan's Law in its entirety violates the *ex post facto* clause, prohibition against double jeopardy, and protection of due process rights under the United States Constitution. Plaintiff was unable to raise these claims in the hearing provided for by the New Jersey Supreme Court in *Doe.* Hence, the *Rooker–Feldman* doctrine does not impede this Court's exercise of subject matter jurisdiction over plaintiff's cause of action.

## II. Preliminary Injunction

Upon finding that the Court has jurisdiction to entertain plaintiff's Complaint, the Court is now faced with the difficult decision of what remedy to employ. Plaintiff has requested that the Court grant a preliminary injunction until the Court is able to make a final determination on plaintiff's *ex post facto* and double jeopardy claims. Likewise, defendants have argued that plaintiff is not entitled to preliminary injunctive relief.

■ The standards for issuance of a preliminary injunction are well-settled. In ruling on a motion for preliminary injunction, the Court must consider: (1) the likelihood that the plaintiff will prevail on the merits; (2) the extent to which the plaintiff is being irreparably harmed; and, where relevant, (3) the extent to which the defendant or other interested persons will suffer irreparable harm if the injunction is issued; and (4) the extent to which the public interest favors the granting of the requested relief. *See Merchant & Evans, Inc. v. Roosevelt Bldg. Prods.,* 963 F.2d 628, 632–33 (3d Cir.1992), *on remand,* 1992 WL 160880 (E.D.Pa. June 24, 1992); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197–98 (3d Cir.1990) (citations omitted). *See also Morton v. Beyer,* 822 F.2d 364, 367 (3d Cir.1987). "[T]he grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988) (citing *United States v. City of Philadelphia,* 644 F.2d 187, 191 n. 1 (3d Cir.1980)). *See also Falter v. Veterans Admin.,* 632 F.Supp. 196, 201 (D.N.J.1986) (quotations omitted) ("There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction."). An injunction should issue only if the plaintiff produces evidence sufficient to convince the court that all four factors favor preliminary relief. *Opticians Ass'n of Amer. v. Independent Opticians of Amer.,* 920 F.2d 187, 192 (3d Cir.1990).

■ The first element which the plaintiff much establish for the Court is that he or she has "a reasonable probability of eventual success in the litigation." *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1147 (3d Cir.1982). Plaintiff E.B. relies on this Court's previous holding in *Artway* that the Tier Two and Tier Three notification provision in Megan's Law are unconstitutional on its face. *See Artway,* 876 F.Supp. at 692. Defendants, on the other hand, argue that under the New Jersey Supreme Court's opinion in *Doe,* plaintiff cannot demonstrate a likelihood of success on the merits. *See Doe,* 142 N.J. at 73, 662 A.2d 367. As noted above, the Court stands by its decision in *Artway,* and therefore finds that plaintiff does have a reasonable probability of eventual success on the merits. Accordingly, plaintiff has satisfied the first prong of the preliminary injunction analysis.

Second, plaintiff must show that he will suffer irreparable harm "which cannot be redressed by a legal or an equitable remedy following trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994). The harm " 'must be of a peculiar nature, so that compensation in money cannot atone for it.' " *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir.1977)). Where constitutional rights have been infringed upon, the threat of irreparable injury and disservice to the public interest is clear. *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 166 (5th Cir.1993). This Court has previously recognized that "[t]he public dissemination of a registrant's information may well affect his employability, his business associations with his neighbors, and thus, his ability to return to a normal private law-abiding life in the community." *Artway*, 876 F.Supp. at 689. As further evidence that plaintiff E.B. will be irreparably harmed if defendants are permitted to proceed with notification under Megan's Law, plaintiff introduced a threatening letter which was received at his residence on January 31, 1996.[3] The Court is persuaded that these types of threats, as well as those concerns outlined in *Artway*, constitute irreparable harm upon which the Court can grant a preliminary injunction.

Once the notifications are effectuated by defendants, there is no way to retract it; there is no way to unscramble an egg. No amount of money or prospective relief will eliminate the image of plaintiff or his crimes from the minds of those who are notified. Hence, the Court concludes that plaintiff has clearly demonstrated that he will suffer irreparable injury if a preliminary injunction is not issued. In contrast, defendants will not suffer irreparable injury upon the Court's issuance of a preliminary injunction. Defendants' do not argue to the contrary in their brief.

Finally, the Court may consider the interest of the public when deciding to grant or deny a preliminary injunction. Defendants argue that "legislative intent and the safety of the citizenry are paramount" to the plaintiff's rights. On balance, the Court cannot agree that an individual's rights guaranteed by the United States Constitution must give way to that public interest. Since his release by the Virginia Prison Authority in 1989, plaintiff has been a law-abiding and productive member of society.

Because the Court finds that plaintiff has successfully established the four elements required for this Court to grant a preliminary injunction, the Court will **GRANT** the instant application for preliminary relief.[4] Accordingly, the Court **TEMPORARILY ENJOINS** defendants from Tier Three notification regarding plaintiff under Megan's Law.

## CONCLUSION

For the foregoing reasons, the Court concludes that it is not prevented by the *Rooker–Feldman* doctrine from exercising subject matter jurisdiction. Furthermore, the Court holds that plaintiff has satisfied the Court that he is entitled to a preliminary injunction. Accordingly, plaintiff's application is **GRANTED,** and defendants are **TEMPORARILY ENJOINED** from implementing Tier Two and Tier Three notifications under Megan's Law until further Order of this Court. Of course, after the decision of the Third Circuit in *Artway* is issued, either party may move the Court for such relief as may be appropriate on short notice.

---

**3.** The letter states as follows:

It is disgusting that they would allow a filthy repulsive piece of garbage like you out of prison. They should have sent you to the gas chamber. You deserved to die. Anyone who assaults children does not have the right to live. We do not want the likes of you in our neighborhood [sic]. You should go back to prison where you can be around bums, criminals and subhumans like you.

People like you never change. You will always be a criminal. Go away, we do not want you here. We do not want to live in fear that you will assault and kill our innocent children.

You should kill yourself, you will never have a normal life, you have no good reason for living. You know that you are not normal and you know you need to die. Kill yourself and end the misery you have caused so many people. Make all the suffering go away, kill yourself and the sooner the better.

**4.** The Court recognizes Fed.R.Civ.P. 65(c) which requires the party who obtains the preliminary injunction to give security. This case, however, involves only constitutional issues and not monetary concerns. Therefore, the Court waives the security requirement in this case.

An appropriate Order accompanies this Opinion.

## ORDER

**This matter** having come before the Court on plaintiff E.B.'s application for an Order to Show Cause why defendants Deborah T. Poritz, Attorney General of the State of New Jersey; Charles R. Buckley, Acting Bergen County Prosecutor; and James Mosley, Chief of Police of the City of Englewood, New Jersey, should not be enjoined from implementing the provisions of the Registration and Community Notification Laws (hereinafter "Megan's Law"), N.J.S.A. 2C:7–1 to 11, and why a Preliminary Injunction should not issue pending a final disposition of the matter, and the Court having heard oral argument, and considered the submissions of the parties, and for the reasons appearing more particularly in the Letter Opinion of this Court in the above-captioned matter, and good cause having been shown,

**IT IS** on this 1st day of February, 1996, hereby

**ORDERED** that plaintiff's application is **GRANTED,** and it is further

**ORDERED** that defendants are **TEMPORARILY ENJOINED** from implementing Tier Two and Tier Three notification under Megan's Law as to plaintiff until further Order of this Court.