**Joe DOE, Plaintiff,**

v.

**Christine O. GREGOIRE, et al., Defendants.**

**No. C97–188WD.**

United States District Court, W.D. Washington.

March 21, 1997.

Todd Maybrown, Allen & Hansen, Seattle, for John Doe.

John Joseph Samson, Attorney General's Office, Corrections Division, Olympia, Thomas W. Kuffel, King County Prosecuting Attorney's Office, Civil Division, Seattle, for Christine O. Gregoire.

Christine O'Grady Gregorie, Attorney General's Office, Olympia, pro se.

Thomas W. Kuffel, King County Proscuting Attorney's Office, Civil Division, Seattle, for Norm Maleng.

Sandra L. Cohen, Thomas Sean Sheehan, Seattle City Attorney's Office, Seattle, for Norm H. Stamper, Robert A. Shilling.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

DWYER, District Judge.

This action under 42 U.S.C. § 1983 was brought by a State of Washington prisoner, who was then about to be released, seeking to enjoin state, county, and local officials from enforcing, against him, a Washington statute that requires sex offenders to register and authorizes local law enforcement agencies to publicize information about them. The pro se complaint makes several constitutional claims, including one under the Ex Post Facto Clause.[1] On February 19, 1997, the plaintiff filed an ex parte motion for a temporary restraining order. On February 20 the motion was granted in part and denied in part: As to registration and notification of law enforcement officers, the motion was denied; as to notification of others including community groups and the media, the motion was granted pending a hearing on plaintiff's motion for a preliminary injunction (Dkt.# 8). On February 27, 1997, the defendant Attorney General of Washington filed a written response to the motion for a preliminary injunction. A hearing on the motion was held in open court on February 28, 1997. All defendants appeared by counsel, and plaintiff appeared pro se. All defendants adopted the Attorney General's written response as their own. The court appointed counsel to represent plaintiff pursuant to this district's Plan for the Representation of Pro Se Litigants in Civil Rights Actions (Dkt.# 24), and adopted a schedule calling for plaintiff's reply brief to be filed on March 6, 1997 (Dkt.# 23). The temporary restraining order was modified to state that no person was prevented from responding to an unsolicited request for information made under Washington's Public Disclosure Law, and that any party could seek further modifications to the order through a telephone conference call placed to the court and other counsel (Dkt.# 23). No such telephonic request has been received. Plaintiff's counsel filed a reply brief on March 6. Supplemental briefs regarding one disputed area were filed at the court's request on March 19. The temporary restraining order, as modified on February 28, has remained in effect pending a ruling on the motion for a preliminary injunction.

The matter has now been thoroughly briefed by both sides, and all materials filed have been considered. No party has requested further oral argument, and none is necessary.

■ To obtain a preliminary injunction, the moving party must show either (1) a combination of a strong chance of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and a balance of hardships tipping sharply in his favor. *Bernard v. Air Line Pilots Ass'n, Intern., AFL–CIO*, 873 F.2d 213, 217 (9th Cir.1989). These are not two distinct tests, but opposite ends of a continuum in which the showing of harm varies inversely with the showing of meritoriousness. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.1988) (en banc), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989).

■ Turning first to plaintiff's prospects for success on the merits, a Section 1983 claimant must show that he has been denied, or is about to be denied, a right protected by the Constitution. *See Parratt v. Taylor*, 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986). One such right is afforded by Article I, Section 10, which provides that "[n]o State shall enter into any ... ex post facto law." A similar constraint is placed on the federal government. Article I, Section 9. The Ex Post Facto Clause protects against the retroactive application of a law that "inflicts greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. 386 (3 Dall. 386), 390, 1 L.Ed. 648 (1798).

---

1. The plaintiff has been authorized to proceed as "John Doe," without prejudice to any later application to have his true name substituted in the pleadings. See Dkt. # 23 and *United States v. John Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1980).

■ It is undisputed that the plaintiff's crimes, of which he was convicted in 1985, predated Washington's enactment of the relevant statute in 1990. The key issue is whether the statute's public notification provisions are punitive or merely regulatory; if punitive, they cannot be enforced against the plaintiff.

The statute, known as the Community Protection Act of 1990 ("1990 Act"), was adopted in response to an atrocity committed by a released sex offender. *See* Michelle Jerusalem, Note, *A Framework for Post–Sentence Sex Offender Legislation,* 48 Vand. L.Rev. 219, 228–29 (1995). It provides for enhanced criminal penalties for sex offenders (RCW 9.94A.310–.320), involuntary post-sentence commitment of those found likely to reoffend due to a mental abnormality or personality disorder (RCW 71.09.010–.020),[2] registration of released offenders (RCW 9A.44.130), and public notification as deemed necessary by local law enforcement agencies (RCW 4.24.550).

Under the 1990 Act, any person residing in Washington who has been convicted of a sex offense, as defined by RCW 9.94A.030, must register with the sheriff for the county of the person's residence. RCW 9A.44.130(1). A sex offender must provide his name, address, date and place of birth, place of employment, crime of conviction, date and place of conviction, aliases used, and social security number. RCW 9A.44.130(2). The sheriff must obtain a photograph and a copy of the offender's fingerprints. RCW 9A.44.130(5). The information is forwarded to the Washington State Patrol for inclusion in a central registry. RCW 43.43.540. If an offender intends to move from a registered address, he must send written notice of the change to the county sheriff at least fourteen days in advance. RCW 9A.44.130(4)(a). If the new residence is in a different county, the offender must also register with the sheriff of the new county within twenty-four hours of moving. RCW 9A.44.130(4)(a). A knowing failure to register, or to give timely notice of a change of address, is a felony or gross misdemeanor, depending on the severity of the original conviction. RCW 9A.44.130(7).

The 1990 Act authorizes agencies to "release relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection." RCW 4.24.550(1). Whether public notification should be made, who among the public should be notified, and what information is deemed "necessary," are left to the discretion of local law enforcement agencies. On the face of the statute, all information provided by the registrant (including his address and place of employment) could be publicized. No notice or hearing is required, and no guidelines are provided to the local agencies.

In this case the Seattle Police Department ("SPD") is the local law enforcement agency having the discretion. The record shows that the SPD's Sex Offender Oversight Committee classifies each released offender at one of three levels, depending on the assumed likelihood of recidivism. A Level 1 offender is required only to register; no public notification is made. At Level 2 or Level 3 (the latter being the likeliest to reoffend), the SPD delivers "Sex Offender Information Bulletin, Notification of Release" forms to block watch captains in the federal census tract in which the offender resides and in the immediately abutting tracts, the State Department of Corrections, the King County Police, the Seattle Housing Authority, the University of Washington Police, the Office of the Mayor, the City Council, the Seattle Center, schools within the federal census tract where the offender resides, the Seattle School District, the Seattle Parks Department, and the Seattle Public Library. At Level 3, notification forms are also provided to local news media. The notification forms supply the offender's photograph, name, age, date of birth, and the vicinity of his current residence, together with a summary of his past crimes and a statement that he is likely to reoffend. The SPD exercises its discretion by withholding the offender's vehicle description, exact address, and place of employment.

---

**2.** This provision was held unconstitutional on ex post facto and other grounds in *Young v. Weston,* 898 F.Supp. 744 (W.D.Wash.1995), which is now on appeal to the Ninth Circuit, No. 95–35958.

The plaintiff here was released from state custody about four weeks ago. The Department of Corrections ("DOC") bulletin to law enforcement agencies, notifying them of his release, described in detail plaintiff's 1985 conviction of violent rape of an adult female plus two counts of robbery. It also gave graphic details of other crimes in which plaintiff was an uncharged suspect. The bulletin described plaintiff as "an untreated, brutal sex offender, who may have committed more sex offenses than his conviction record reflects; he may have committed a homicide." It added that he "is alleged to have been extremely cruel and violent to his ... former spouse," and provided details. It cited a February 1997 psychological evaluation noting that plaintiff "has a high likelihood to again commit predatory violent offenses against adult women." While concluding that plaintiff "may be a high risk for reoffense," the bulletin expressed doubt as to whether the risk lay with sex crimes or elsewhere: "[B]ased on the information available to the evaluator, it was determined that there were insufficient facts to predict that [plaintiff's] predatory and violent offense behavior will more likely than not be sexual in nature." On February 27, 1997, the Seattle Police Sex Offender Oversight Committee classified plaintiff as Level 3 for purposes of community notification. The record is unclear as to whether this decision was based entirely on the DOC bulletin, or on the bulletin plus other information available to the police. No notice or hearing was provided. The classification means that, unless an injunction is issued, full public notification will follow, including notification to the media.

It must be determined what relevant change the 1990 Act made in preexisting law; an ex post facto violation based on punishment occurs only if the punishment is increased. When plaintiff committed his crimes, Washington law provided that "conviction records may be disseminated without restriction." RCW 10.97.050(1). "Conviction records" included information on charges, convictions, and sentences and "information contained in records maintained by or obtained from criminal justice agencies, other than courts, which records provide individual identification of a person together with any portion of the individual's record of involvement in the criminal justice system as an alleged or convicted offender . . . ." This did not include a description of alleged crimes with which the offender was never charged, nor an assessment of his propensity to reoffend, nor his current address and place of employment.[3] Another statute provided that no law enforcement authority could require a person to "make himself known as a convicted felon." RCW 43.43.745. The 1990 Act changed preexisting law by requiring each sex offender to register and by authorizing local law enforcement agencies to notify the public and the media not only of his identity and criminal record, but also, in their discretion, of his address, place of employment, and assessed propensity to reoffend. The changes relevant here are thus twofold: First, more information and opinion about the offender are put into an accessible public record. Second, law enforcement agencies are empowered to notify selected members of the public—even the entire public—of an offender's history and location, and of other identifying information, while pronouncing him dangerous to be at large. In practice, agencies disseminate not just the offender's record of charges and convictions, but also a narrative description of alleged crimes with which he was never charged. The change from simple recording to active dissemination is critically important. The Supreme Court has recognized that a privacy interest may

---

**3.** There was no statutory provision for public disclosure of arrests or investigations that did not lead to a charge, nor for a narrative criminal history newly drafted by the police, nor for a police-generated assessment of propensity to reoffend. An offender while under post-release supervision was required to notify his community corrections officer of any change in his address or employment. RCW 9.94A.120(11). But the state's Public Disclosure Law exempted from disclosure "[p]ersonal information in any files maintained for . . . prisoners, probationers, or parolees." RCW 42.17.310(1)(a) (1985); *see* Washington Laws 1989, ch. 205, § 20. "Personal information" exempt from disclosure would have included a released person's current address and unlisted telephone number. *See* RCW 42.17.310(2) and *State v. Butterworth*, 48 Wash. App. 152, 737 P.2d 1297 (1987), *review denied*, 109 Wash.2d 1004 (1987) (holding that such information is protected by a right to privacy under the Washington Constitution).

protect against widespread disclosure even of information on the public record. There is a difference, the Court has held,

> between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.

*Department of Justice v. Reporters Committee,* 489 U.S. 749, 764, 109 S.Ct. 1468, 1477, 103 L.Ed.2d 774 (1989). The question here is whether an additional punishment is imposed, not whether a privacy interest exists, but *Reporters Committee* shows that a difference of constitutional dimension can exist between the state's keeping information in an open file, on the one hand, and broadcasting it to the public on the other. As stated by another district court, a public notification statute of this nature makes the information

> available not just to those who take the time and effort to search out courthouse records, telephone books, or other sources of public information, but to each and every member of a registrant's community, whether they are interested or not. In this Court's view, especially in light of the concern expressed by the Supreme Court in *Reporters Committee, supra,* such an eclipse of a registrant's future weighs heavily in favor of finding it to be an affirmative disability or restraint.

*Artway v. Attorney General,* 876 F.Supp. 666, 689 (D.N.J.1995), *vacated in part,* 81 F.3d 1235 (3d Cir.1996).

There is no single bright-line test for what constitutes punishment within the meaning of the Ex Post Facto Clause. In *Doe v. Pataki,* 940 F.Supp. 603, 616 (S.D.N.Y.1996), the court marshaled the authorities and concluded that the cases most closely in point

> examine factors that can be grouped into four general areas: (a) the legislative intent, *i.e.,* whether the intent of the legislature, viewed both subjectively and objectively, was to punish; (b) the design of the statute, *i.e.,* whether the statute is designed and structured in a manner that suggests it is punitive; (c) the historical treatment of the measure in question, *i.e.,*

whether comparable measures historically were considered to be punishment; and (d) the effects of the law, *i.e.,* whether the law has the effect of punishing. [Citations omitted.]

In a 1996 double jeopardy case (an area which similarly calls for a determination of what is "punishment"), the Supreme Court held that a reviewing court must ask first whether the legislature intended the law to be civil or criminal, and then whether the law is so punitive in effect that it may not legitimately be viewed as civil. *United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996). But in a 1997 ex post facto case, *Lynce v. Mathis,* —— U.S. ——, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Court gave little weight to legislative intent. In *Lynce,* a state had awarded a prisoner early release credits under a statute designed to relieve overcrowding, released him on the basis of those credits, and then, pursuant to a 1992 statute, canceled the credits and returned him to prison. Holding that this action violated the Ex Post Facto Clause, the Court said that both sides' "submissions place undue emphasis on the legislature's subjective intent in granting the credits rather than on the consequences of their revocation." *Id.* at ——, 117 S.Ct. at 896. Whether the legislature had acted in the first place to reduce punishment for good behavior or simply to relieve overcrowding "is not relevant to the essential inquiry demanded by the Ex Post Facto Clause." *Id.* at ——, 117 S.Ct. at 896. The Court went on to say that "[t]o the extent that any purpose might be relevant in this case, it would only be the purpose behind the legislature's 1992 enactment of the offense-based exclusion." *Id.* at ——, 117 S.Ct. at 897. Legislative purpose is thus not entirely taken off the board, but the main thrust of *Lynce* is that consequences—the punitive *effects* of a measure— matter most. "The narrow issue we must decide," said the Court, "is thus whether those consequences [of the 1992 statute] disadvantaged petitioner by increasing his punishment." *Id.* at ——, 117 S.Ct. at 896.

In *Rise v. Oregon,* 59 F.3d 1556, 1562 (9th Cir.1995), the Ninth Circuit held that requiring certain offenders to provide DNA sam-

ples—a "minimal intrusion"—was not a punishment because the statute's "overall design and effect" showed a "non-punitive intent." But in addressing not only the purpose but the effects of the statute, the court noted that DNA sampling was less drastic than other procedures such as sex offender registration laws. *Id.* at 1561 n. 4.

Thus, a legislature may have a genuine regulatory purpose in mind, but if the sanction imposed amounts to punishment it must be treated as such. As the Third Circuit has said:

> [A]t some level the "sting" will be so sharp that it can only be considered punishment regardless of the legislators' subjective thoughts. For example, the legislature, with the purest heart(s), could extend the prison sentences of all previously convicted sex offenders for the sole reason of protecting potential future victims. It was simply not understood how dangerous they would be when released, the legislators could truthfully explain, and society would be safe only if sex offenders were kept behind bars. This remedial purpose would thus fully explain the continued incarceration; ... the continued imprisonment would be "rationally related" to the goal of protecting vulnerable citizens. But no Justice has ever voted to uphold a statute that retroactively increased the term of imprisonment for a past offense.

*Artway v. Attorney General,* 81 F.3d 1235, 1261 (3rd Cir.1996).

■ As to the statutory requirements of registration and notification of law enforcement agencies, the present case is easily decided. These provisions are regulatory, not punitive, and may be applied to plaintiff without violating the Ex Post Facto Clause. *See Pataki,* 940 F.Supp. at 629–30; *Artway,* 876 F.Supp. at 688.

The public notification provisions are another matter. They have been upheld by the Washington Supreme Court against an ex post facto challenge in *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994), and by the chief judge of this district in an unreport-

ed decision, *Stearns v. Gregoire,* C95–1486D.[4] The *Stearns* order is on appeal to the Ninth Circuit (No. 96–35398), has been argued there, and awaits decision. Until *Stearns* is decided, or another holding of the Supreme Court or the Ninth Circuit provides authority on point, a district court in this circuit must make a fresh decision on the merits. *Ward* and *Stearns* are instructive but not controlling, and the courts that decided them did not have available a number of important published opinions that have appeared since.

Many other states have adopted similar sex offender registration and notification laws, and there is a growing body of decisional law concerning them. Several courts have held that the Ex Post Facto Clause prohibits the retroactive enforcement of public notification provisions. *See, e.g., Pataki,* 940 F.Supp. 603; *Artway,* 876 F.Supp. 666, *vacated in part,* 81 F.3d 1235 (3d Cir.1996); *Roe v. The Office of Adult Probation,* 938 F.Supp. 1080 (D.Conn.1996); *E.B. v. Poritz,* 914 F.Supp. 85 (D.N.J.1996); *Rowe v. Burton,* 884 F.Supp. 1372 (D.Alaska 1994), *appeal dismissed,* 85 F.3d 635 (9th Cir.1996); *State v. Myers,* 260 Kan. 669, 923 P.2d 1024 (1996). Other courts have held to the contrary. *See Ward* and *Stearns, supra,* and *W.P. v. Poritz,* 931 F.Supp. 1199 (D.N.J. 1996); *Opinion of the Justices,* 423 Mass. 1201, 668 N.E.2d 738 (1996); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 387–406 (1995).

As to *legislative intent,* although the 1990 Act contains explicit criminal and penalty-enhancing provisions, the legislature's expressed purpose for the registration requirement was regulatory. There is a legislative finding that "sex offenders often pose a high risk of reoffense," and a declaration that "this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders to register ...." Washington Laws 1990, ch.3 §§ 117, 401. For purposes of this order a regulatory intent will be assumed. That factor alone, however, cannot be decisive.

Of greater importance is whether *punitive effects* are imposed by public notification under the 1990 Act. *See Lynce,* —— U.S. at

---

4. Another unreported opinion by a judge of this district denied injunctive relief but did not deal with an ex post facto claim. *Profit v. Gregoire,* C96–1012Z.

———————, 117 S.Ct. at 896–97; *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Nulph v. Faatz*, 27 F.3d 451, 456 (9th Cir.1994).

Defendants have filed declarations by police detectives showing how the public notification system works. A police committee decides what to publicize and to whom. Descriptions are given not only of convictions but of uncharged crimes. The vicinity of the person's residence is disclosed. An assessed likelihood for reoffending is stated. Defendants have provided three examples of public notifications made as to other sex offenders. The first describes the subject as "very high risk to reoffend." The second refers to "other victims (for which he was never prosecuted)." The third describes the person as "very high risk to reoffend."

In his declaration seeking injunctive relief, plaintiff describes the effects of such public notification on released sex offenders in Washington and elsewhere as follows:

> I submit to this court a sampling of news articles which document the type of harassment and ridicule that is commonly visited upon sex offenders by members of the community who are notified. *See* Exhibit 2. Shots were fired into the home of one offender. See 2–A. Some offenders were forced out of their homes. See *id.*, at 2–J. While another offender was evicted from his apartment and fired from his job. See *id.*, at 2–B, D. Numerous offenders were harassed and intimidated by their neighbors. See id., at 2–A (threats of a firebomb), 2–C (barrage of telephone calls and threats), 2–E (harassment of apartment residents), 2–I (death threats and other harassment), 2–K (threats and harassment), 2–L (no place for freed sex offender to go), 2–M (sex offender run out of his home by neighbors after a storm of opposition from angry neighbors and an arson at his home). Posters with a "vigilante edge" were posted about two Seattle offenders. See *id.* at 2–K.
>
> Finally, this Court should consider the recent plight of Joseph Gallardo, a sex offender who attempted to return home to Lynnwood, Washington after being released from prison. Gallardo faced extraordinary harassment from members of the community who received notice from the Snohomish County Sheriff's Office. Gallardo ultimately fled the state after his house was burned to the ground by an arsonist just hours after neighbors held a rally opposing his return. See id. at 2–L. Washington's notification laws, no matter how well intentioned, inevitably lead to these sorts of situations . . . .

Plaintiff supports these allegations with a series of newspaper clippings. Such consequences have been found or stipulated to in other cases. *See, e.g., Pataki*, 940 F.Supp. at 608–11 (including several serious incidents in Washington to which the parties stipulated); *Artway*, 81 F.3d at 1266 (noting that the plaintiffs "marshall[ed] strong reasons that notification would have devastating effects"). The defendants, however, attack plaintiff's clippings as hearsay and provide police declarations that very few instances of harassment have been reported in King and Pierce Counties, and those have been mild. The dispute need not give rise to an evidentiary hearing because the exposure of released sex offenders to a high risk of harassment and reprisal is effectively conceded in the record. The detective in charge of the SPD's program describes in detail the steps his department takes to discourage harassment: advising people "not to take any personal action against sex offenders"; stressing that "harassment of sex offenders will not be tolerated"; holding "emergency community meetings" after two reported incidents; and warning that "continued harassment could result in a repeal of the sex offender registration law." These precautions recognize the obvious: that public notification exposes released offenders not just to scrutiny but to hostility, harassment, and reprisal. The Washington Supreme Court has recognized this as well, requiring "the disclosing agency to gauge the public's potential for violence and draft the warning accordingly." *Ward*, 123 Wash.2d at 503, 869 P.2d 1062.

■ Such consequences, whatever motivated their imposition, are punitive in nature. They serve the classic goals of retribution, deterrence, and incapacitation. *See Pataki*, 940 F.Supp. at 612. They make rehabilita-

tion more difficult. *Id.* at 628. A regulatory measure may have such effects incidentally, to some degree, without amounting to a punishment. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. But here the punitive effects are dominant and inescapable. To impose them retroactively on burglars, for example, or shoplifters, who also might plausibly be deemed "likely to reoffend," surely would be impermissible; the outcome can be no different for an even less popular category, sex offenders.

It is no answer to say that harassment or other vigilante action is carried out by private citizens, not by the government. It is the government that, through an ex parte finding of dangerousness, stigmatizes the offender as likely to reoffend, and penalizes him by communicating this to the public. That private citizens may aggravate a punishment does not erase the government's responsibility for initiating it. *See Pataki,* 940 F.Supp. at 627–28; *cf. Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); *Anderson v. Romero,* 72 F.3d 518, 523 (7th Cir.1995).

The *design and structure* of the statute, as to public notification, contain both regulatory and punitive elements. To notify the public, the legislature has reasoned, is to enlist a multitude in the cause of watching, being wary of, and reporting on the offender, and thus of controlling his behavior. But notification—like the original sentence—is triggered by a criminal conviction, and it inflicts, unavoidably, humiliation, ostracism, and often worse. Those effects must especially be recognized where the statute's design goes beyond any demonstrated regulatory need. As the Kansas Supreme Court has held, "the excessive scope of public disclosure of registered information" is a key factor in determining whether notification is punitive. *Myers,* 923 P.2d at 1041. The 1990 Act here permits notification on a grand scale, in the discretion of local police. The Washington Supreme Court has held that the disclosing agency must have some evidence of an offender's future dangerousness, must disclose

information only when necessary, and must use a geographic scope of dissemination rationally related to the threat posed by the registered offender. *Ward,* 123 Wash.2d at 503, 869 P.2d 1062. But there is no statutory means to enforce any such constraints. The SPD's classification of plaintiff as Level 3 provides a striking example of the statute in action. Plaintiff's history, deplorable as it is, does not show pedophilia or a heightened risk to neighbors as distinguished from others; his offenses, both proved and alleged, were committed against adult women he met in bars or parking lots, or against his wife. Yet the proposed notification, recounting his record and describing him as likely to reoffend, would go to neighboring block watch captains, the Seattle Housing Authority, the Mayor, the City Council, the Seattle Center, schools, the parks department, and the public library, among others, and to the media. The breadth of this list of recipients suggests not regulation but punishment.

*History,* as well, supports categorizing the 1990 Act's public notification measures as punitive. In our latter-day obsession with prisons, we forget that they are a comparatively recent phenomenon and that through most of history other punishments have dominated. Among these, in the western world, have been the death penalty, flogging, mutilation, fines, and exile; but also prominent have been punishments that inflict shame, humiliation, and public hatred. The stocks, the pillory, and facial markings have been used for this purpose. *See Ex Parte Wilson,* 114 U.S. 417, 428, 5 S.Ct. 935, 940–41, 29 L.Ed. 89 (1885); Friedman, *Crime and Punishment in American History* 40 (1993). As the *Pataki* court noted, "using the power of public humiliation alone as a form of punishment has a long history in America"—and "[p]ublic notification is the modern-day equivalent of branding and shaming." *Pataki,* 940 F.Supp. at 625.

◼ In summary, the 1990 Act's public notification provisions (as distinguished from its registration provisions) must be deemed punitive in nature. The Ex Post Facto Clause therefore prohibits their enforcement against the plaintiff. It follows that plaintiff

has satisfied the "probability of success" part of the preliminary injunction test.

The possibility of irreparable harm has also been shown. Once public notification occurred on the scale proposed by defendants it could not be retracted, and some of the likely adverse consequences would be irreparable. *See, e.g., Roe,* 938 F.Supp. at 1092–94; *E.B. v. Poritz,* 914 F.Supp. at 91.

It will be said, of course, that sex offenders deserve the sanctions imposed by the 1990 Act, and more. That belief is understandable but it cannot override the Ex Post Facto Clause. Constitutional claims are often asserted by litigants who arouse little sympathy; when those claims are valid they must be honored. As the Supreme Court said last month in *Lynce,* —— U.S. at ——, 117 S.Ct. at 895:

> The specific prohibition on ex post facto laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its law-making power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and the powerful, *United States v. Winstar Corp.,* 518 U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), but also the indigent defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment.

For the reasons stated, the motion for a preliminary injunction is denied as to the 1990 Act's provisions for registration and notification of law enforcement agencies. The motion is granted as to the public notification provisions; defendants are preliminarily enjoined from enforcing the latter against plaintiff, whose crimes were committed before the Act's effective date. This order will not prevent any person from responding to an unsolicited request for information in compliance with the Washington Public Disclosure Law, RCW 42.17.260. Any party may move to vacate or modify this preliminary injunction at any time before judgment is entered. Because the Ex Post Facto Clause requires the relief now ordered, plaintiff's other constitutional claims need not be decided.

The clerk is directed to send copies of this order to all counsel of record.