36 P.3d 1255

STATE of Hawai'i, Plaintiff–Appellee,

v.

**Eto BANI, Defendant Appellant.**

No. 22196.

Supreme Court of Hawai'i.

Nov. 21, 2001.

Motion for Clarification and Order of Amendment Granted Dec. 6, 2001.

Reconsideration Denied Jan. 11, 2002.

Robert T. Nakatsuji, Deputy Public Defender, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney (Mangmang Qiu Brown with her on the brief) for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Circuit Judge GRAULTY, assigned by reason of vacancy.

Opinion of the Court by RAMIL, J.

This appeal involves a challenge to the constitutionality of Hawaii's sex offender registration and notification statute, codified at Hawai'i Revised Statutes (HRS) chapter 846E (Supp.2000). The arguments advanced implicate the inherent tensions between safety and freedom that exist in any democracy. The question ultimately raised is how the people of Hawai'i may protect themselves against future offenses by those prone to recidivism without jeopardizing the constitutional rights of persons who have already paid the price imposed by law for their crimes. Resolving the issues and arguments raised in this appeal requires us to discern and delineate the sensitive and difficult balance between these tensions embodied in the United States and Hawai'i Constitutions.

Defendant-appellant Eto Bani ("Bani") pled no contest to the charge of sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a) (Supp.1993).[1] Follow-

---

1. HRS § 707–733 provides:

**Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
(a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion;
(b) The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to alarm the other person or put the other person in fear of bodily injury; or
(c) The person knowingly trespasses on property for the purpose of subjecting another person to surreptitious surveillance for the sexual gratification of the actor.

ing Bani's plea, the district court ordered Bani, as part of his sentence, inter alia, to register as a sex offender pursuant to the sex offender registration and notification law, HRS chapter 846E, commonly known as "Megan's Law." On appeal, Bani contends, under the United States and Hawai'i Constitutions, that the statute violates: (1) the constitutional right to procedural due process; (2) the constitutional right to privacy; (3) the prohibition against cruel and unusual punishment; and (4) the right to equal protection of the law.

For the reasons discussed below, we hold that the public notification provisions of HRS chapter 846E deprive Bani of a protected liberty interest without due process of law. Our conclusion derives from the fact that HRS § 846E-3 authorizes public notification of Bani's status as a convicted sex offender without notice, an opportunity to be heard, or any preliminary determination of whether and to what extent Bani actually represents a danger to society. In our view, the absence of any procedural safeguards in the public notification provision of HRS chapter 846E renders the public notification portion of HRS chapter 846E unconstitutional, void, and unenforceable. Our decision today is based solely upon article I, section 5 of the Hawai'i Constitution, and we pass no judgment upon Bani's remaining constitutional claims in this appeal.

## I. BACKGROUND

Bani pled no contest to the charge of sexual assault in the fourth degree in exchange for a sentence of one year of probation, subject to special conditions of two days of incarceration with credit for time served, an alcohol assessment and any recommended treatment, a $300.00 fine, and a $50.00 contribution to the criminal injuries fund. Defense counsel, however, notified the circuit court that it would be challenging the constitutionality of the sex offender registration and notification statute—HRS chapter 846E.

At the time of Bani's no contest plea, the parties placed some of the underlying facts of

(2) Sexual assault in the fourth degree is a misdemeanor.
(3) Whenever a court sentences a defendant for an offense under this section, the court

the case into the record. Bani stated that he could not recall the events that occurred. Defense counsel added:

[Defense Counsel]: Your Honor, the only thing I would add is the police report does indicate that all the witnesses to the events stated that Mr. Bani was intoxicated at the time and he did tell me that he did have a lot of alcohol before the offense and that possibly did effect his memory of the offense. But nonetheless he wanted to proceed today by entering a no contest plea to conclude these matters today.

The prosecution then stated:

[Deputy Prosecutor]: Your Honor, complaining witness being under the age of 18, I believe she was 17 years old and under [HRS] 707–733 she was subjected to sexual contact by compulsion by the defendant in the manner in being in Waikiki last week Friday night. He did grab her buttocks two times as well as asking her if she wanted to go to a party. She was therefore scared, did not give him any permission to do this.

THE COURT: And I assume that you also would have established that this was by compulsion[,] that is[,] there is an absence of consent.

[Deputy Prosecutor]: Correct, Your honor, she didn't give him any permission.

Thereafter, defense counsel requested an order from the trial court prohibiting the compilation and release of registration information pending appeal of the sentence in this case. Specifically, defense counsel argued:

Your Honor, before the Court orders the sex offender registration, we would ask that the Court at this point issue an order prohibiting the entity that would be releasing the information from getting the information and prohibiting the attorney general and the police department from releasing the registration information to the public in the future pending our appeal of this sentence. And we'd object to the sex offender registration requirement be-

may order the defendant to submit to a pre-sentence mental and medical examination pursuant to section 706-603.

ing imposed on this charge on the following grounds:

That one, Chapter 8—HRS Chapter 846 violates the Federal and Hawaii Constitution prohibitions against cruel and unusual punishment; specifically the 8th Amendment of the U.S. Constitution [and] Article I Section 12 of the Hawaii Constitution. And we would submit that for this type of misdemeanor sex assault offense, that the burden imposed by the sex offense statute is so disproportionate to this type of offense and the duration of the penalty, we're talking about lifetime registration, every ninety (90) days and there are felony type penalties which attach to failure to register despite whatever the reason for the failure may be.

So we'd submit that the punishment on the defendant is disproportionate to the type of offense we're here for which is a misdemeanor, maximum punishment being one (1) year in jail and this penalty will be for his lifetime.

And secondly, we would submit that the statute violates procedur[al] due process rights of the defendant under the 5th and 14th Amendments of the U.S. Constitution and Article I Section 5 of the Hawai'i Constitution and the statute improperly delegates to the government the decision on what information to release to the public. There are no limits or guidelines placed on the government's power to release information on this particular individual. Specifically that the government need not demonstrate an imminent threat to the public. The offender in this case, my client, is not afforded an opportunity to be heard prior to the notification or at a later point in time. And we'd submit that the statute also fails to provide relief from the registration requirement even after the offender is demonstrated that he has been rehabilitated or that a re-offense would not be an issue.

And the statute also fails to require a risk assessment to determine whether registration is appropriate for this individual. And that the statute violates substantive due process [sic]; that the purpose of the act is to register and protect the public

from all sex offenders. However, we would submit that this offense is a sex assault so it is sexual in nature but the penalty is not commensurate to the threat this defendant would pose to the community, i.e. offenders who are convicted of murder or robbery or aggravated assault type of offenses those people would not be made to register. And the statute lacks the rational basis.

. . . .

And, finally, that the statute violates privacy clauses of the Hawaii Constitution under Article I, Section 6 and 7; that the government has not demonstrated a compelling state interest for the dissemination of all this information to the public such that defendant's privacy rights should be infringed to the extent that the statute requires. This statute requires work information, home information and all this information would be available to the public. It could even be on the Internet for worldwide access.

The prosecution responded by stating, "Your Honor, the State would just ask that you follow the law in that he is required to register in this matter, especially since the victim was a minor."

The district court sentenced Bani to one year of probation, subject, inter alia, to the terms and conditions provided for in the plea agreement. The district court then explained the reporting requirements of HRS chapter 846E to Bani. Finally, the district court denied the request to prohibit release of the registration information and ruled that the statute applies to Bani. With respect to Bani's constitutional challenge to HRS chapter 846, the district court ruled:

THE COURT: Alright, I'm going to deny the request to stay the attorney general's forwarding of any information pursuant to this chapter. And I also, I'm going with this point, I believe the law, as it is written, seems to apply to you. So I'm going to require you to undergo this matter. I know this matter is on appeal and may be appealed in this case but we'll let the Supreme Court decide exactly how this law is going to work with respect to you, alright?

Mr. Bani: Okay.

After sentencing, Bani filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review questions of constitutional law "by exercising our own independent constitutional judgment based on the facts of the case." *State v. Rogan*, 91 Hawai'i 405, 411–12, 984 P.2d 1231, 1237–38 (1999) (quoting *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996) (quoting *State v. Trainor*, 83 Hawai'i 250, 255, 925 P.2d 818, 823 (1996), and *State v. Lee*, 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996))). Accordingly, we review questions of constitutional law under the "right/wrong" standard. *Whiting v. State*, 88 Hawai'i 356, 358, 966 P.2d 1082, 1084 (1998) (citing *State v. Quitog*, 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997), and *State v. Toyomura*, 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995) (citing *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied*, 79 Hawai'i 341, 902 P.2d 976 (1995))); *see also State v. Mallan*, 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998) (citation omitted).

## III. DISCUSSION

### A. Overview of the Sex Offender Registration Requirements

HRS chapter 846E (Supp.2000) imposes certain registration requirements on "sex offender[s]." HRS § 846E–1 defines a "sex offender" as "[a]ny person convicted of a 'sexually violent offense' or a 'criminal offense against a victim who is a minor[.]'" A "[c]riminal offense against a victim who is a minor" can include any of the following offenses:

(1) Kidnapping of a minor, except by a parent;

(2) Unlawful imprisonment in the first degree of a minor, except by a parent;

(3) Criminal sexual conduct toward a minor;

(4) Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

(5) Use of a minor in a sexual performance;

(6) Solicitation of a minor to practice prostitution;

(7) Any conduct that by its nature is a sexual offense against a minor, but excludes conduct that is criminal only because of the age of the victim, as provided in section 707–730(1)(b) or section 707–732(1)(b), if the perpetrator is eighteen years of age or younger;

(8) An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (7); or

(9) Any state, federal, or military law similar to paragraphs (1) through (8).

HRS § 846E–1.

As noted above, the term "sex offender" extends to any person convicted of a "sexually violent offense." *Id.* A "[s]exually violent offense" can include "[a]n act defined in [HRS] section 707–730(1)(a) [ (sexual assault in the first degree-sexual penetration by strong compulsion) ], 707–730(1)(b) [ (sexual assault in the first degree—sexual penetration of a person less than fourteen years of age) ], 707–731(1)(a) [ (sexual assault in the second degree—sexual penetration by compulsion) ], 707–731(1)(b) [ (sexual assault in the second degree-sexual penetration of a person who is mentally defective, mentally incapacitated, or physically helpless) ], 707–732(1)(a) [ (sexual assault in the third degree-reckless sexual penetration by compulsion) ], 707–732(1)(e) [ (sexual assault in the third degree-sexual contact by strong compulsion) ], ... 707–733(1)(a) [ (sexual assault in the fourth degree-sexual contact by compulsion) ]," any comparable offense, and any attempt, criminal solicitation, or criminal conspiracy to commit these offenses. *Id.*

HRS § 846E–2(a) requires sex offenders to register with the attorney general and comply with the provisions of HRS chapter 846E "for life." Nothing in HRS chapter 846E provides for the possibility of an offender *ever* obtaining relief from the requirements of the statute.

HRS § 846E–2(b) requires sex offenders to provide the attorney general with the following:

a recent photograph, verified fingerprints, and a signed statement by the sex offender containing:

(1) Name and all aliases used by the sex offender or under which the sex offender has been known and other identifying information, including date of birth, social security number, sex, race, height, weight, and hair and eye color;

(2) The legal address and telephone number of the sex offender's residence or mailing address, or any current, temporary address where the sex offender resides, and for each address how long the sex offender has resided there;

(3) The legal address and telephone number where the sex offender is staying for a period of more than ten days, if other than the stated residence;

(4) The future address and telephone number where the sex offender is planning to reside, if other than the stated residence;

(5) Names and legal addresses of current and known future employers and the starting and ending dates of any such employment;

(6) The year, make, model, color, and license number of all vehicles currently owned or operated by the sex offender;

(7) A summary of the criminal offenses against victims who were minors and sexually violent offenses for which the sex offender has been convicted or found unfit to proceed or acquitted pursuant to chapter 704;

(8) A statement indicating whether the sex offender has received or is currently receiving treatment for mental abnormality or personality disorder;

(9) A statement indicating whether the sex offender is a United States citizen; and

(10) Any additional identifying information about the sex offender.

HRS § 846E–3 mandates the registration information be disclosed to law enforcement agencies for law enforcement purposes and to government agencies conducting confidential background checks. Moreover, the attorney general and county police departments must publicly release "relevant information that is necessary to protect the public." HRS § 846E–3(a)(3). Such release provides for public access at the Hawai'i Criminal Justice Data Center and at designated county police stations, during business hours. HRS § 846E–3(d). Registration information on any offender "may" also be released by the respective law enforcement agencies through an "interactive computer-based system," *i.e.*, the Internet. *Id.;* Sen. Stand. Comm. Rep. No. 1125, in 1997 Senate Journal, at 1318 (posting on the Internet).

The Hawai'i Criminal Justice Data Center currently publishes collected information about registered sex offenders on the official website of the State of Hawai'i, making it readily accessible to persons throughout the world. The information on the website, which can be searched by first or last name, street name, or zip code, includes the offender's name, color photograph, conviction information, along with the make, model, year and license plate number of the offender's automobile, all under the banner "Sex Offender Registry."[2]

HRS § 846E–3 does not specify any limitations as to who can access the registration information, what information may be accessed, or the purpose for which the registration information may be accessed. Furthermore, HRS § 846E–3 does not impose a limitation as to which sex offender's registration information will be made public. As a result, HRS § 846E–3 authorizes the attorney general and any county police department to allow *any member* of the general public to access expansive registration information[3] on *any* sex offender. In fact, HRS

2. *See* eHawaiiGov (visited August 22, 2001) <http://www.hawaii.gov>.

3. Under HRS § 846E–3(b), "relevant information that is necessary to protect the public" means:

§ 846E-3(c) unambiguously provides: "Relevant information that is necessary to protect the public shall be collected for purposes of making it available to the general public, and *a sex offender shall have a diminished expectation of privacy in the information.*"[4] (Emphasis added.)

Within three days of release from custody or arrival in a county where the sex offender expects to reside or be present for more than ten days, the offender is required to register in person with the county police chief. HRS § 846E-4(e). Pursuant to HRS § 846E-4, "[n]o sex offender required to register under this chapter shall be discharged, released

(1) Name and all aliases used by the sex offender or under which the sex offender has been known;

(2) The street name and zip code where the sex offender resides and how long the sex offender has resided there;

(3) The street name and zip code where the sex offender is staying for more than ten days; if other than the stated residence;

(4) The future street name and zip code, if known, where the sex offender is planning to reside, if other than the stated residence;

(5) The street name and zip code of the sex offender's current locations of employment;

(6) The year, make, model, color, and license number of all vehicles currently owned or operated by the sex offender;

(7) A brief summary of the criminal offenses against victims who were minors and the sexually violent offenses for which the sex offender has been convicted or found unfit to proceed or acquitted pursuant to chapter 704; and

(8) A recent photograph of the sex offender.

4. HRS § 846E-3(c) provides that "a sex offender shall have a diminished expectation of privacy in the [registration] information." Although the legislature attempts to exempt HRS chapter 846E from the constitutional right to privacy, the framers of article I, section 6 of the Hawai'i Constitution intended to entrust the definition of the right to privacy "to *both* the legislature *and the courts.*" *Mallan*, 86 Hawai'i at 451, 950 P.2d at 189 (emphasis added). To allow the legislature to exempt the statute from constitutional requirements, without independent review by this court and the judiciary, would effectively nullify article I, section 6. As we have stated: "Our ultimate authority is the Constitution; and the courts, not the legislature, are the ultimate interpreters of the Constitution." *State v. Nakata*, 76 Hawai'i 360, 370, 878 P.2d 699, 709, *reconsideration denied*, 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied*, 513 U.S 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *see also Del Rio v. Crake*, 87 Hawai'i 297, 304, 955 P.2d 90, 97

from any confinement, or placed on parole or probation unless . . . all registration information required . . . has been obtained." Further, HRS § 846E-5 requires the offender to verify the registration information with the attorney general, by mail, every 90 days. Upon any change in registration information, the offender must notify the attorney general of the change within three working days.[5] HRS § 846E-6. HRS chapter 846E subjects the offender to all of these requirements for life, regardless of the gravity of the offense committed.

Failure to comply with the requirements of HRS chapter 846E constitutes a substantive

(1998) (stating that "the question as to the constitutionality of a statute is not for legislative determination, but is vested in the judiciary, and a statute cannot survive constitutional challenge based on legislative declaration alone." (citation omitted)). Furthermore, the legislature's intent to preclude judicial review of HRS chapter 846E violates the doctrine of "separation of powers," which

> is intended to preclude a commingling of . . . essentially different powers of government in the same hands and thereby prevent a situation where one department would be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments.

*Pray v. Judicial Selection Comm'n*, 75 Haw. 333, 353, 861 P.2d 723, 732 (1993) (ellipsis points in original) (citations and quotation signals omitted). As an imperative of the separation of powers doctrine, this court maintains the power to review the provisions of HRS chapter 846E for a violation of article I, section 6 of the Hawai'i Constitution. Accordingly, it is this court, at the appropriate time, and not the legislature, that will ascertain whether, for purposes of HRS chapter 846E, a sex offender has a "diminished" expectation of privacy in statutorily enumerated "relevant information."

5. In addition, HRS § 846E-7 provides:

Immediately, and in no event, not later than ten days after receiving notice of a change of registration information, the attorney general shall report the change of registration information by a sex offender required to register under this chapter to the county police department where the sex offender is residing and, in the event the sex offender changes address to another county or state, shall report such change of address to the Federal Bureau of Investigation. If the person changes residence to another state, the attorney general also shall notify the law enforcement agency with which the person must register in the new state, if the new state has a registration requirement.

criminal offense. *See* HRS § 846E–9. A reckless failure to comply, if it is a first offense, constitutes a misdemeanor. HRS § 846E–9(1). An intentional or knowing failure to comply, or a second or subsequent offense, however, constitutes a class C felony. HRS §§ 846E–9(2) & (3).

The Hawai'i legislature enacted HRS chapter 846E in 1997 to ensure the release of relevant information concerning the presence of sex offenders necessary to protect the public. 1997 Haw. Sess. L. Act 316, § 1 at 749–50. Specifically, the legislature noted the following justifications for sex offender registration and notification requirements:

> The legislature finds that sex offenders who use physical violence, sex offenders who prey upon children, and repeat sex offenders present an extreme threat to the public safety. These sex offenders commit far more offenses than they are prosecuted for and victimize far more individuals than ever report the crimes. For too long, the interests of justice have been heavily weighted on concern for the offenders' rights, and there is a need to balance the scales of justice between the rights of offenders and the rights of victims.

> In particular, victims of sex offenders suffer devastating and long-term consequences that too often are felt by succeeding generations. Because of the continuing stigma associated with such crimes, victims often fail to seek or receive adequate treatment and counseling and, as a result, exhibit characteristics such as continuing fear and intimidation, inadequate social skills and job preparedness, sexual anxiety, difficulty relating to others, immaturity or arrested psychological development, and repeated patterns of child or sexual abuse of others. Clearly, the cost to individuals and to society at large, while incalculable, is exorbitant.

> . . . .

> The legislature is cognizant of the rising concern in the community and among law enforcement officials with crime in our society. Moreover, the legislature is painfully aware of the State's worsening economic condition and the competing demands for the limited funding available among so many critical needs. The legislature finds that immediate action is necessary to ensure that the federal funds desperately needed by law enforcement agencies are not lost.[6] Accordingly, the legislature finds and declares that, in view of the State's current economic crisis and the ever present concern over crime, it is in the interest of the public by ensuring the release of relevant information concerning the presence of sex offenders in the community.

*Id.* The legislature intended HRS chapter 846E to be Hawaii's version of legislation, popularly known as "Megan's Law," which has recently proliferated throughout the country.[7]

### B. *Procedural Due Process*

#### 1. *Registration component*

■ There is nothing inherent in the act of registering that imposes on any of Bani's protected liberty interests. The vast majori-

---

6. In 1994, Congress enacted, and the President signed into law, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program. *See* 42 U.S.C. § 14071 (1994 & Supp.2001). Under this legislation, the Attorney General of the United States was required to establish guidelines for state programs requiring persons convicted of crimes against minors or crimes of sexual violence to register a current address with state law enforcement officials. 42 U.S.C. § 14071(a)(1)(A). The guidelines "constitute a floor for state programs, not a ceiling." Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as Amended, 64 Fed.Reg. 572, 575 (issued Jan. 5, 1999, amended Jan. 22, 1999). The law was subsequently amended to establish heightened registration and notification requirements for certain serious offenders in 1996, and for those deemed to be "sexually violent predators" in 1998. 42 U.S.C. § 14071 (Supp.2001). Failure to implement a registration and notification program that complies with the foregoing results in the loss of some federal funding. 42 U.S.C. § 14071(g)(2)(A).

7. "Megan's Law" is named after seven-year-old Megan Kanka of Hamilton, New Jersey, who was sexually assaulted and murdered on July 29, 1994. The person charged with the crime lived across the street from Megan Kanka's family. Unknown to the Kankas, the person charged with the crime was a convicted pedophile.

ty of federal and state courts confronted with the issue of the validity of sex-offender registration statutes have found the laws constitutional on procedural due process grounds. *See, e.g., Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir.), *reh'g and suggestion for reh'g en banc denied,* (1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000); *Russell v. Gregoire,* 124 F.3d 1079 (9th Cir. 1997), *cert. denied,* 523 U.S. 1007, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998); *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir.1996) [hereinafter *Artway II*]; *Patterson v. State,* 985 P.2d 1007 (Alaska App.1999); *Snyder v. State,* 912 P.2d 1127 (Wyo.1996); *Kellar v. Fayetteville Police Department,* 339 Ark. 274, 5 S.W.3d 402 (1999). Accordingly, as the registration component does not interfere with any of Bani's protected liberty interests, the protections of procedural due process are not triggered.

### 2. *Notification component*

Bani contends that HRS chapter 846E violated his procedural due process rights by failing to provide him with adequate procedural protections prior to depriving him of a protected liberty interest. Specifically, Bani argues that he was entitled to notice and an opportunity to be heard before being subjected to HRS chapter 846E's public notification provisions.

■ The fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution provide in relevant part that no person shall be deprived of "life, liberty, or property without due process of law[.]" Therefore, we address procedural due process claims in two steps: First, we must determine whether a "liberty" or "property" interest has been interfered with by the State; second, we must determine what specific procedures are required to satisfy due process. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *cf. Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 242–43, 953 P.2d 1315, 1340–42 (1998) [hereinafter *Korean Buddhist Temple*].

■ At its core, procedural due process of law requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest. *See Korean Buddhist Temple,* 87 Hawai'i at 243, 953 P.2d at 1341; *Price v. Zoning Board of Appeals,* 77 Hawai'i 168, 172, 883 P.2d 629, 633 (1994); *Sandy Beach Defense Fund v. City and County of Honolulu,* 70 Haw. 361, 376, 773 P.2d 250, 260 (1989) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The due process clause strives "to ensure that individuals who have property [and liberty rights] are not subject to arbitrary governmental deprivation of those rights." *Alejado v. City and County of Honolulu,* 89 Hawai'i 221, 226, 971 P.2d 310, 315 (App.1998) (citation omitted).

### a. *Bani's protected interests*

■ "Due process ... is relevant only if liberty or property is deprived." *In re Herrick,* 82 Hawai'i 329, 342–43, 922 P.2d 942, 955–56 (1996) (quoting *International Bhd. of Elec. Workers v. Hawaiian Tel. Co.,* 68 Haw. 316, 332, 713 P.2d 943, 956 (1986) (citation omitted)). We therefore address the preliminary issue of whether the public notification provisions of HRS chapter 846E implicate a liberty interest protected by the Hawai'i Constitution.

Hawai'i appellate courts have not had occasion to consider whether a person's reputation alone constitutes a "liberty interest" protected by the Hawai'i Constitution. However, the United States Supreme Court has previously recognized that a person's reputation is a protected liberty interest under the federal due process clause. *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (hereafter *"Constantineau"*); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (hereafter *"Roth"*).

In *Constantineau,* the State of Wisconsin authorized the posting of a notice prohibiting the sale or gift of liquor to any person who "'by excessive drinking' produces described conditions or exhibits specified traits, such as exposing himself or family 'to want' or becoming 'dangerous to the peace' of the community." On appeal, the *Constantineau*

Court recognized that "[i]t would be naive not to recognize that such 'posting' or characterization of an individual will expose him to public embarrassment and ridicule." 400 U.S. at 436, 91 S.Ct. 507. The Court therefore held that a protectable liberty interest is implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her.]" *Id.* at 437, 91 S.Ct. 507.

One year later, the Court again recognized a person's liberty interest may be implicated by damage to his or her reputation. *See Roth,* 408 U.S. at 573, 92 S.Ct. 2701. The plaintiff in *Roth,* a university professor, alleged that "the failure of University officials to give him notice of any reason for nonretention and an opportunity for a hearing violated his right to procedural due process of law." *Id.* at 569, 92 S.Ct. 2701. The *Roth* Court reasoned that, in declining to hire the plaintiff, the state had neither advanced "any charge against him that might seriously damage his standing and associations in the community" nor "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573, 92 S.Ct. 2701. The *Roth* Court noted, however, that "a different case" would have been presented had the state either damaged the plaintiff's reputation or imposed a stigma on him. *Id.* at 573–74, 92 S.Ct. 2701.

However, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), the Court clarified that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. 1155. The plaintiff in *Paul* alleged a deprivation of liberty without due process of law after the circulation of flyers publicizing his conviction for shoplifting and labeling him an "active shoplifter." *Id.* at 712, 96 S.Ct. 1155. According to the *Paul* Court, because the plaintiff's harm was not accompanied by the alteration of "a right or status previously recognized by state law," there was no depri-

vation of a protectable liberty interest. *Id.* at 711–12, 96 S.Ct. 1155.

*Paul* has been interpreted to require "stigma plus" in order to establish a constitutional deprivation. *See, e.g., Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994). In other words,

> an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all the attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right; infringement of more 'tangible interests' ... must be alleged as well.

*Borucki v. Ryan,* 827 F.2d 836, 842–43 (1st Cir.1987); *see also Marshall v. University of Hawaii,* 9 Haw.App. 21, 32, 821 P.2d 937, 948 (1991).

For the reasons discussed below, we conclude that Bani has shown substantial injury to both his reputation and other "tangible interests." This case does not therefore require us to determine whether a person's reputation alone constitutes a protected liberty interest under the Hawai'i Constitution. Suffice it to say that Bani has established that the public notification provisions of HRS chapter 846E implicate a liberty interest protected by the due process clause of the Hawai'i Constitution.

First, Bani has demonstrated that the public notification provisions of HRS chapter 846E will likely cause harm to his reputation. The statute effectively brands Bani a "sex offender," *i.e.,* a public danger, for life. *See Doe v. Pataki,* 3 F.Supp.2d 456, 467 (S.D.N.Y.1998) [hereinafter *Pataki III*]; *Doe v. Attorney General,* 426 Mass. 136, 686 N.E.2d 1007, 1013 (1997) [hereinafter *Doe II*]; *see also Bohn v. County of Dakota,* 772 F.2d 1433, 1436 n. 4 (8th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986).

Specifically, HRS chapter 846E's public notification provisions imply that Bani is potentially dangerous, thereby undermining his reputation and standing in the community. *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 419 (1995); *cf. Neal v. Shimoda,* 131 F.3d 818, 829 (9th Cir.1997) (noting that "[o]ne need only look to the increasingly popular

'Megan's laws,' whereby states require sex offenders to register with law enforcement officials who are then authorized to release information about the sex offender to the public, to comprehend the stigmatizing consequences of being labeled a sex offender"). Indeed, public notification that Bani is a convicted sex offender implicitly announces that, in the eyes of the State, Bani presents a risk of committing another sex offense. *Doe II*, 686 N.E.2d at 1013.

Second, Bani will foreseeably suffer serious harm to other "tangible interests" as a result of registration as a sex offender. Potential employers and landlords will foreseeably be reluctant to employ or rent to Bani once they learn of his status as a "sex offender." *See Pataki III*, 3 F.Supp.2d at 468; *W.P. v. Poritz*, 931 F.Supp. 1199, 1219 (D.N.J.1996), *rev'd*, 119 F.3d 1077 (3d Cir. 1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) [hereinafter *Verniero* ]; *see also In re Reed*, 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (1983) (quoting *In re Birch*, 10 Cal.3d 314, 110 Cal.Rptr. 212, 515 P.2d 12 (1973)).[8] Indeed, the public disclosure provisions of HRS chap-

ter 846E can adversely affect an offender's personal and professional life, employability, associations with neighbors, and choice of housing. *Noble v. Board of Parole and Post–Prison Supervision*, 327 Or. 485, 964 P.2d 990, 995–96 (1998); *State v. Myers*, 260 Kan. 669, 923 P.2d 1024, 1041 (1996), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997); *Rowe v. Burton*, 884 F.Supp. 1372, 1378 (D.Alaska 1994), *appeal dismissed*, 85 F.3d 635, 1996 WL 252825 (9th Cir.1996) (personal and professional lives); *Artway v. Attorney General*, 876 F.Supp. 666, 668 (D.N.J.1995), *aff'd in part and vacated in part*, 81 F.3d 1235 (3d Cir.), *reh'g denied*, 83 F.3d 594 (1996) (employability and associations with neighbors); Robin L. Deems, Comment, *California's Sex Offender Notification Statute: A Constitutional Analysis*, 33 San Diego L.Rev. 1195 (1996) (citing Jenny A. Montana, Note, *An Ineffective Weapon in the Fight Against Child Sexual Abuse: New Jersey's Megan's Law*, 3 J.L. & Pol'y 569, 580–81 (1995)) (choice of housing). In addition, public disclosure may encourage vigilantism and may expose the offender to possible physical violence.[9] *See, e.g., Poritz*,

---

8. In *Reed*, the California Supreme Court likened the increased burden of police scrutiny resulting from California's sex offender registration requirement to the final scene of the classic film " 'Casablanca,' in which, after a German officer is assassinated, the Vichy police inspector laconically gives the order to 'round up the usual suspects.' " 191 Cal.Rptr. 658, 663 P.2d at 218 n. 5.

9. Numerous cases of violence and harassment have been documented throughout the country as a result of mandatory registration and public notification provisions similar to those in HRS chapter 846E. For example, on January 29, 1996, reporters kept a constant vigil outside a New York registrant's home for several days after a district attorney alerted the media that the registrant, who had been convicted of statutory rape was scheduled to be sentenced to probation. *Pataki I*, 940 F.Supp. at 608–09. On March 5, 1996, a New York school superintendent sent a mass mailing to all residents of the district after being informed by police that a sex offender had moved into the community following his release from prison. After the mailing, the individual was fired from his job, members of his family were harassed, his brother received "ominous, anonymous" telephone calls, and an attempt was made to break into his home. *Id.* at 609.

In an incident occurring in New Jersey, a convicted sex offender was literally driven out of

town after a crowd of news vans, reporters, and members of the Guardian Angels set up a round-the-clock stakeout outside his mother's apartment where he had been living. The Guardian Angels posted "wanted" posters for the offender throughout the neighborhood and made public threats against him and his family. *Id.* Other New Jersey sex offenders subjected to community notification suffered similar consequences: the loss of employment; threats of violence; property damage; being forced from their homes; and other public harassment. *Id.*

In a 1993 incident in Washington, an offender's home was burned to the ground soon after police disclosed that the offender who had been convicted of raping a 10–year old girl was about to be released from prison. The offender relocated to New Mexico, but after Washington police notified his community of his presence, he was forced to move again. *Id.* Another Washington sex offender was evicted from the trailer park where he resided after he had become the object of a campaign of harassment and intimidation. He thereafter was forced to leave a second community after citizens there posted fliers with his photograph. He lost three jobs before he was forced to leave Washington State. *Id.*

Many other incidents of violence and harassment have been documented. *See id.* at 608–11. Although we know of no similar incidents in Hawai'i, we note that a person subject to the

662 A.2d at 430–31 (Stein, J., dissenting); *Pataki I,* 940 F.Supp. 603, 608–11 (S.D.N.Y. 1996); *Doe v. Gregoire,* 960 F.Supp. 1478, 1485 (W.D.Wash.1997). Indeed,

> [w]hen a government agency focuses its machinery on the task of determining whether a person should be labeled publicly as having a certain undesirable characteristic or belonging to a certain undesirable group, and that agency must by law gather and synthesize evidence outside the public record in making that determination, the interest of the person to be labeled goes beyond mere reputation.... [I]t is an interest in avoiding the social ostracism, loss of employment opportunities, and significant likelihood of verbal and, perhaps, even physical harassment likely to follow from designation.

*Noble,* 964 P.2d at 995–96. Therefore, HRS chapter 846E is highly likely to cause irreparable harm to Bani's reputation and professional life, employability, associations with neighbors, and choice of housing.

The *Paul* Court recognized that, in addition to the interests recognized by state law, "[t]here are other interests ... protected not by virtue of their recognition by the law of a particular State but because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Paul,* 424 U.S. at 710 n. 5, 96 S.Ct. 1155. As an example, in *Bohn,* 772 F.2d at 1436 n. 4, the United States Court of Appeals for the Eighth Circuit found a protectable interest in reputation where the stigma of being identified as a child abuser was tied to the protectable interest in privacy and autonomy of family relationships. *See also Poritz,* 662 A.2d at 419 (holding that the stigma resulting from notification that petitioner was a sex offender was tied to the protectable interest in privacy inasmuch as he had an interest in his reputation); *Neal,* 131 F.3d at 830 (holding that Hawaii's designating of prisoner as "sex offender" without hearing and requiring successful completion of treatment program as precondition for parole eligibility together

registration requirements and public notification provisions of HRS chapter 846E could potential-

implicated a liberty interest protected by the right to due process of law).

Under these circumstances, we are persuaded by the following considerations that Bani has a liberty interest protected by the Hawai'i Constitution that entitles him to procedural due process: (1) the public disclosure of accumulated and synthesized personal information that would not otherwise be easily available; (2) the potential harm to his personal and professional life; (3) the foreseeable harm to his reputation; and (4) the statutory branding of him as a public danger, *i.e.,* as a sex offender. We note that the "interest cannot be captured in a single word or phrase. It is an interest in knowing when the government is moving against you and why it has singled you out for special attention. It is an interest in avoiding the secret machinations of a Star Chamber." *Noble,* 964 P.2d at 995.

### b. *Due process of law*

■ Having held that HRS chapter 846E operated to deprive Bani of a protected liberty interest, we review the underlying objectives of HRS chapter 846E in order to ascertain whether the statute afforded Bani the due process of law guaranteed him by article I, section 5 of the Hawai'i Constitution.

■ The minimum requirements of due process are notice and the opportunity to be heard. *Korean Buddhist Temple,* 87 Hawai'i at 243, 953 P.2d at 1341; *Price,* 77 Hawai'i at 172, 883 P.2d at 633; *Sandy Beach,* 70 Haw. at 378, 773 P.2d at 261 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *see also Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). However, we have repeatedly recognized that "[d]ue process is not a fixed concept requiring a specific procedural course in every situation." *Korean Buddhist Temple,* 87 Hawai'i at 243, 953 P.2d at 1341 (citations omitted). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citations omitted). To determine what procedural protections are re-

ly face damages to his or her tangible interest beyond his or her reputation or good name.

quired in a given case, we must balance the following factors (the *Mathews* factors):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. 893); *Korean Buddhist Temple,* 87 Hawai'i at 243, 953 P.2d at 1341 (citations omitted).

A review of the process, or lack thereof, by which HRS § 846E operated to deny Bani's protected liberty interest, reveals that Bani was denied the minimum requirements of due process: notice and the opportunity to be heard.

### i. Bani's interest

Undoubtedly, Bani's interest in the protected "liberty" denied him by HRS § 846E is great. As discussed at length above, the public notification provisions adversely affect a person's interests in reputation, employment and earning opportunities, housing, and personal safety. As the United States Court of Appeals for the Third Circuit observed:

> Notification puts the registrant's livelihood, domestic tranquility, and personal relationships all around him in grave jeopardy. This jeopardy will not only extend to virtually every aspect of the registrant's everyday life, it will also last [a lifetime].... As the New Jersey Supreme Court recognized in [Poritz] ..., a registrant thus has a compelling interest in an accurate and reasonable disposition of the issues before the court in a Megan's Law hearing.

*Verniero,* 119 F.3d at 1107.

### ii. Risk of erroneous deprivation

The current procedures under the public notification provisions of HRS chapter 846E are extremely broad and contain absolutely no safeguards to prevent erroneous deprivations of a registrant's liberty interests. Without any preliminary determination of whether and to what extent an offender represents a danger to society, the level of danger to the public posed by any particular sex offender, if any, remains unknown. Surely, not all offenders present a significant danger to the public. Yet, HRS chapter 846E currently deprives *all* offenders—including those who present no danger to the community and are not likely to recidivate—of these interests *automatically,* for life. Therefore, persons convicted of crimes listed under HRS chapter 846E who do not pose a significant danger to the community are at substantial risk of being erroneously deprived of their liberty interests.

### iii. State's interest

The State generally has a compelling interest in protecting its citizens inasmuch as sex offenders pose a threat to the community. As noted above, the legislature stated that its goal in enacting HRS chapter 846E was to "protect ... the public *from sex offenders* and ... [to] protect ... children *from predatory sexual activity.*" 1997 Haw. Sess. L. Act 316, § 1 at 749 (emphases added). The legislature explicitly found that "sex offenders who use physical violence, sex offenders who prey upon children, and repeat sex offenders present an *extreme threat to the public safety*". *Id.* (emphasis added). Concerns were expressed about the victims of sex offenders, who often suffer devastating and long-term consequences. "[T]he cost to individuals," the legislature noted, "and to society at large, while incalculable, is exorbitant." *Id.* Ultimately, the legislature concluded that, "in view of the State's current economic crisis and the *ever present concern over crime,* it is in the interest of the public by ensuring the release of *relevant information* concerning the presence of sex offenders in the community." *Id.* (emphases added). Based upon this language, the legislature intended to provide for sex offender registration and public dissemination of relevant information about a sex offender to protect the public from sex offenders who present an *"extreme threat to public safety."* Thus, the

State also has an interest in assuring that the information disclosed to the public, which carries a label that a person is a danger to the community, is accurate. Accordingly, the State itself has an interest in affording procedural safeguards to ensure against erroneous deprivations of registrant liberty interests.

### iv. Balancing test

A weighing of these factors leads us to conclude that, at a minimum, Bani was entitled to notice and an opportunity to be heard prior to public notification of his status as a sex offender. In other words, the State must allow a registered sex offender a meaningful opportunity to argue that he or she does not represent a threat to the community and that public notification is not necessary, or that he or she represents only a limited threat such that limited public notification is appropriate. Because HRS § 846E-3 provided Bani with neither notice nor an opportunity to be heard prior to notifying the public of his status as a convicted sex offender, HRS § 846E-3 denied Bani the due process of law guaranteed him by article I, section 5 of the Hawai'i Constitution. Accordingly, we hold that the public notification provisions of HRS chapter 846E are void and unenforceable.

As noted *supra* in note 6, federal legislation conditions the receipt of federal funds on the existence of a state sex offender registration and notification regime that meets certain federal guidelines. Accordingly, we are cognizant that our holding will likely necessitate a legislative response. Historically, this court has not hesitated to utilize its opinions to prescribe particular procedures in order to ensure due process. *See, e.g., Silver v. Castle Memorial Hospital*, 53 Haw. 475, 486, 497 P.2d 564, 572 (1972) (dictating procedural safeguards to be employed by hospitals when considering doctor's application for initial appointment or reappointment to staff); *Mortensen v. Board of Trustees of Employees' Retirement Sys.*, 52 Haw. 212, 473 P.2d 866 (1970) (dictating procedural safeguards to be employed by Employees Retirement System in determining whether claimant is entitled to accidental disability retirement benefits). In this case, however, we decline to do so.

Our hesitation to judicially graft procedural protections upon HRS chapter 846E stems in part from our awareness that there are currently more than fifty sex offender registration and notification statutes in the United States. These statutes vary widely from state to state in both structure and approach. Many include a system by which sex offenders are classified for purposes of notification, the extent of community notification being dependent upon the threat posed by the offender. *See, e.g., Russell v. Gregoire*, 124 F.3d 1079, 1082-83 (9th Cir. 1997) (discussing Washington statute); *Poritz*, 662 A.2d at 378-79 (discussing New Jersey statute). The United States Court of Appeals for the Ninth Circuit recently observed that, "[w]ith only one exception, every sex offender registration and notification law that has been upheld by a federal Court of Appeals has tailored the provisions of the statute to the risk posed by the offender." *Doe I v. Otte*, 259 F.3d 979, 992 (9th Cir. 2001) (citation omitted). Upon review of these varied approaches, it becomes evident that the difficult and sensitive task of reaching an accommodation between the State's substantial interest in requiring sex offender registration and notification, on the one hand, and an offender's legitimate interest in ensuring against erroneous deprivation of his or her liberty interest, on the other, is best left, in the first instance, to the legislature. *Cf. Konno v. County of Hawai'i*, 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997).

### C. Bani's Other Claims

In addition to the due process claim, Bani contends that HRS chapter 846E violates his right to privacy, violates equal protection of the law, and constitutes cruel and unusual punishment. Because we conclude that the due process clause of the Hawai'i constitution bars application of the public notification provisions of HRS chapter 846E, we need not consider these arguments.

### IV. CONCLUSION

For the reasons discussed above, we vacate the portion of Bani's sentence ordering him to submit to the notification requirements of HRS chapter 846E and remand this

case for proceedings consistent with this opinion.