**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000319
25-NOV-2025
08:09 AM
Dkt. 158 SO**

NO. CAAP-24-0000319 and CAAP-24-0000320


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


**CAAP-24-0000319**
IN THE INTEREST OF B.C. and O.C.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. FC-S 21-00076)


**CAAP-24-0000320**
IN THE INTEREST OF S.C.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. FC-S 21-00165)


SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard, and Wadsworth, JJ)

In this consolidated appeal, Mother-Appellant (**Mother**) appeals from the March 21, 2024 Order(s) Terminating Parental Rights (**TPR Order**) entered by the Family Court of the First

Circuit (**Family Court**)[1] in case numbers FC-S No. 21-00076 and FC-S No. 21-00165.  We affirm.

Mother raises seven points of error on appeal: **(1)** she disputes multiple findings of fact (**FOFs**), and **(2)** conclusions of law (**COLs**), and she contends **(3)** Petitioner-Appellee Department of Human Services (**DHS**) failed to exercise reasonable reunification efforts, **(4)** the Family Court violated her due process rights by disallowing testimony of her sister at trial, **(5)** DHS violated her due process rights by not making reasonable efforts to prevent the initial removal of Mother's children from her custody, **(6)** the Family Court violated her due process rights by having her arrested, and **(7)** her service plans and the October 5, 2022 Permanent Plan failed to take into account the family's Jehovah's Witness religion.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's arguments as follows.

Under Hawaii Revised Statutes (**HRS**) § 587A-33(a) (2018), a family court may grant a motion to terminate parental rights where: (1) the parent "is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan"; (2) "[i]t is not reasonably foreseeable" that the parent "will become willing and able to provide the child with a safe family home, even with the assistance of a service plan"; and (3) "[t]he proposed permanent plan is in the best interests of the child."  A "family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse

---

[1]    The Honorable Natasha R. Shaw presided.

of discretion."  In re AA, 150 Hawaiʻi 270, 283, 500 P.3d 455, 468 (2021) (brackets and citation omitted).

> The family court's determinations with respect to (1) whether a child's parent is willing and able to provide a safe family home for the child and (2) whether it is reasonably foreseeable that a child's parent will become willing and able to provide a safe family home within a reasonable period of time present mixed questions of law and fact; thus, inasmuch as the family court's determinations in this regard are dependant upon the facts and circumstances of each case, they are reviewed on appeal under the clearly erroneous standard.

In re JM, 150 Hawaiʻi 125, 137, 497 P.3d 140, 152 (App. 2021) (citation modified).

**(1) & (2)** With the exception of FOF 132, Mother provides no specific arguments challenging individual FOFs and COLs, stating only that she objects to the characterizations therein and/or that the findings are conclusory in nature, but she challenges them to avoid being bound by them on appeal.  We do not address challenges not accompanied by specific arguments. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7). As to FOF 132, Mother contends the record lacks any evidence that she threatened "to bring in drums and other musical instruments into the courtroom during the decisions hearing, which caused Mother to miss the Decision Hearing."  The decision hearing was for the Family Court to announce its decision after trial, and any purported error therein would be harmless. See Hawaiʻi Family Court Rule 61 (disregarding error "that does not affect the substantial right of the parties").

**(3)** Mother contends the termination of her parental rights is the proximate result of the Family Court and DHS violating her due process rights.  Mother points to her "unlawful" arrest as a due process violation.  Mother claims her mental health "issues took a turn for the worse" after being

3

separated from her children and being denied contact with them after the Family Court suspended visitation. She claims she was not provided a reasonable opportunity to complete services because DHS and the Family Court could not decide "what those services were"; her mental health providers indicated she "posed no risk of harm to herself or others"; DHS made no efforts to maintain contact between the children and Mother and made no findings to support its position that such contact was unsafe, as required under HRS § 587A-3.1(a)(5)(A) (2018); the Family Court's order that Mother could restart visitation after completing a psychological assessment and progressing in mental health services was impossible to comply with because the psychological evaluation providers refused the referral for retaking her assessment; and visitation was never allowed even after the Family Court lifted the suspension of visitation at DHS and the Guardian Ad Litem's discretion.

"[P]arents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article I, section 5 of the Hawai'i Constitution." In re Doe, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002). "[P]rocedural due process of law requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest." State v. Bani, 97 Hawai'i 285, 293, 36 P.3d 1255, 1263 (2001) (citations omitted). "DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family" and "to make reasonable efforts to reunite parent and child." In re Doe, 100 Hawai'i 335, 343, 60 P.3d 285, 293 (2002) (citations omitted). However, "when the rights of parents and the welfare of their children are in

4

conflict, the welfare of the minor children must prevail." In re Doe Child., 85 Hawai'i 119, 125, 938 P.2d 178, 184 (App. 1997) (citation omitted). The Hawai'i Supreme Court has defined a safe family home as "a family home in which the child's parents or legal custodian can adequately provide for the child's physical and psychological health and welfare and thereby adequately protect the child from harm, be it actual, imminent, or threatened." In re Doe, 95 Hawai'i 183, 194, 20 P.3d 616, 627 (2001) (citations omitted).

The record reflects that Mother consistently violated DHS's various safety plans and behaved in an unsafe manner in the children's presence. She attempted to forcibly remove the children from their placement with maternal aunt Lehua, resulting in an all-night standoff where she locked herself and the children in the bathroom. She later attempted to forcibly remove the children from DHS custody during a July 5, 2022 visit at DHS offices, causing a verbally aggressive scene, which ultimately resulted in Honolulu Police Department arresting her for custodial interference. Mother's visitation could not thereafter resume as she consistently failed to show that she understood the danger posed by her actions, as assessed by two independent Multidisciplinary Teams. Mother cites no authority that termination of parental rights is improper where allegedly improper actions taken by DHS and the Family Court to protect the children caused a parent to "take a turn for the worse." Mother points to no specific instance of DHS and the Family Court's purported inability to decide services she needed. Neither the Family Court nor DHS insisted on a second psychological evaluation after Mother's evaluation provider recommended against it. Mother's mental health provider's opinion that she was not at "imminent risk of danger to self or

others" referred to the criteria for involuntary hospitalization under HRS § 334-60.2 (2022), and was not a clinical endorsement that Mother had resolved her safety issues. Mother's reliance on HRS § 587A-3.1(a)(5)(A) (2018) is misplaced, as that statute governs the rights of children, not parents. Mother fails to show that she was denied due process inasmuch as she was offered multiple opportunities over a period of two years to participate in and complete necessary services to address her safety issues, and her parental rights were terminated only after a trial in which she had a further opportunity to demonstrate she had resolved her safety issues but failed to do so. See In re G.H., Nos. 29187, 29188, 2009 WL 1426786, at *2 (Haw. App. May 22, 2009) (SDO) ("The two-year time limit [in HRS § 587A-33(a)(2)] is the maximum a parent is allowed within which to demonstrate that the parent can provide a safe home, not the minimum.").

**(4)** Mother contends the permanent plan is required to explain how it will allow her to maintain connections with the birth family, and thus, the Family Court violated her due process rights when it denied her request to have her sister Lehua testify as a witness at trial. Because Mother fails to explain what Lehua would have testified to, the court cannot determine whether it was relevant, and thus, whether Mother's due process rights were violated. See Kakinami v. Kakinami, 127 Hawaiʻi 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (noting that the appellate court may "disregard a particular contention if the appellant makes no discernible argument in support of that position" (citation omitted)); see also HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

**(5)** Mother contends DHS violated her due process rights by failing to make reasonable efforts to prevent the original removal of her children, which started a "cascade of

events" culminating in Mother losing custody a second time, prohibited from contacting the children, and ultimately attempting suicide.

Mother makes no specific due process violation argument regarding a denial of notice and an opportunity to be heard.  See HRAP Rule 28(b)(7); Ito v. Invs. Equity Life Holding Co., 135 Hawaiʻi 49, 74, 346 P.3d 118, 143 (2015) ("Where an appellant makes general assertions of a due process violation, without further elaboration or citation to authority, the court cannot reach a reasoned conclusion, and the due process argument is deemed waived." (citation omitted)).  Mother fails to identify any authority supporting her contention that the allegedly improper removal of the children in early 2021 is the legal cause of her inability to demonstrate throughout the case — and eventually at the 2023 trial — that she could provide a safe and secure family home.  Moreover, the record indicates Mother was reunified with the children after the initial removal, but she again failed to demonstrate that the children could be safe in her care.

**(6)** Mother contends the Family Court violated her due process rights when it issued a bench warrant and had her arrested, which caused her to lose custody again.  Mother claims that neither she nor her counsel were properly served with the hearing notice for DHS's motion for immediate review that served as the basis for finding her in contempt.

The Family Court found that the warrant was served to facilitate the locating and securing of the children by DHS after Mother indicated she was voiding the family supervision arrangement and did not respond to DHS's efforts to contact and locate her.  Even if the arrest was improper, Mother fails to articulate a due process violation with respect to the

termination of her parental rights, inasmuch as she fails to establish causation between the allegedly improper arrest and her inability to demonstrate throughout the case and eventually at trial that she could provide a safe and secure family home.

**(7)** Mother contends the Family Court erred in not crafting service plans and a permanent plan that took the family's religion as Jehovah's Witnesses into account. She claims DHS repeatedly referred Mother to Catholic Charities services despite her prior objections, which shows that DHS never had an interest in giving "full and careful" consideration to her religious values. Mother argues that the current resource caregivers are in the military, which Mother objected to on religious grounds; and the Permanent Plan gave no consideration to a cultural connection to the Jehovah's Witnesses community or the children's native Hawaiian heritage.

HRS § 587A-32(a)(4) (2018) requires that a permanent plan "[e]stablish other related goals" relating to the children's "relationship with [their] birth family" and "cultural connections[.]" The permanent plan does not need to identify a prospective adoptive placement. See In re S.L., No. CAAP-24-0000344, 2025 WL 101699, at *3 (Haw. App. Jan. 15, 2025) (SDO) ("Though . . . a pre-termination permanent plan *may* identify a proposed permanent placement as part of its permanency goal, it is not required to do so, as the final determination of permanent placement is not required to be decided until after termination." (citation omitted)); In re SP, No. CAAP-13-0003106, 2014 WL 1658601, at *1 (Haw. App. Apr. 25, 2014) (SDO) ("Specification of adoptive parents is not required in a proposed permanent plan."). The record indicates DHS previously attempted to place the children with several of Mother's relatives under family supervision, but this placement

became untenable because Mother continued to violate the various safety plans. The record also shows that DHS referred Mother to service providers that are not Catholic Charities, and that DHS reached out to other relatives, but none were willing to serve as a permanent placement option for the children.

In sum, Mother fails to show that the Family Court manifestly abused its discretion in terminating her parental rights. See In re AA, 150 Hawaiʻi at 283, 500 P.3d at 468.

Therefore, IT IS HEREBY ORDERED that the March 21, 2024 TPR Order entered by the Family Court in case numbers FC-S No. 21-00076 and FC-S No. 21-00165 are affirmed.

DATED: Honolulu, Hawaiʻi, November 25, 2025.

On the briefs:

Jacob G. Delaplane,
Court-Appointed Counsel,
for Mother-Appellant.

Philip Dureza,
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee.

Brandon K. Eugenio,
for Guardian Ad Litem-Appellee
Court-Appointed Special
Advocates Program.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge