ROBERT WYLER & others[1] *vs.* SECRETARY OF THE
COMMONWEALTH.

Suffolk. January 6, 2004. - February 11, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Elections. General Court. Secretary of the Commonwealth. Constitutional
Law,* Political party.

This court concluded that art. 24 of the Massachusetts Declaration of Rights
did not expressly or impliedly require an actual vacancy of a Senate seat,
or a vacancy to have become effective (as in the present case where a
Senator announced her prospective resignation) before the Senate ordered
a special election [25-27]; moreover, this court concluded that the plaintiffs
in a civil action did not satisfy their burden of demonstrating that the
Senate's order of such a special election violated art. 9 of the Massachusetts
Declaration of Rights by impermissibly favoring one political party over
the other in setting the date of the special election at the time of the
presidential primary [27].

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on December 3, 2003.

The case was reserved and reported by *Sosman,* J.

*Roscoe Trimmier, Jr. (Sarah L. Levine* with him) for the
plaintiffs.

*Peter Sacks,* Assistant Attorney General, for the defendant.

GREANEY, J. The plaintiffs filed a complaint in the Supreme
Judicial Court for Suffolk County pursuant to G. L. c. 214, § 1,
seeking declaratory and injunctive relief in connection with the
action of the Senate on November 18, 2003, ordering a special
election to be held on March 2, 2004, the day of the presidential
primary, to fill the seat held by Senator Cheryl A. Jacques of

[1]Jerome Kennedy, Greg Casey, Daniel McIsaac, Susan Ross, and Roger
Pearson, registered voters and residents in the Norfolk, Bristol, and Middlesex
Senate district; the Massachusetts Republican Party; and Scott P. Brown, a
Wrentham resident, whose motion to amend the complaint to add him as a
plaintiff is allowed.

the Norfolk, Bristol, and Middlesex Senate district. On November 18, 2003, the Senate accepted Senator Jacques's resignation, effective 11:59 P.M. on January 4, 2004. The plaintiffs seek a declaration (with related relief) that "under the terms of the [Massachusetts] [C]onstitution, the Senate is not authorized to act to fill a vacant seat until a vacancy actually exists." Alternatively, the plaintiffs seek a declaration that the Senate's order violated art. 9 of the Declaration of Rights of the Massachusetts Constitution[2] "by impermissibly favoring one political party over the other in setting the date of the special election at the time of the presidential primary." The parties filed a statement of agreed facts and exhibits. A single justice of the court reserved and reported the case without decision to the full court.

On January 7, 2004, after hearing argument on the case, we entered the following order:

"It is hereby ORDERED that judgment is to enter in the county court . . . on the plaintiffs' complaint declaring:

"(a) that there is sufficient standing to maintain the suit;

"(b) that the terms of the Constitution do not prohibit the Senate from acting to set the schedule for a special election to fill the vacancy in the Norfolk, Bristol, and Middlesex district, before the vacancy actually exists, and as a consequence, the Senate's order of November 18, 2003, establishing a special election to fill that vacancy on March 2, 2004, is lawful; and

"(c) the order of the Senate does not violate art. 9 of the Declaration of Rights of the Massachusetts Constitution."

This opinion is in explanation of the order.

---

[2]Article 9 of the Declaration of Rights of the Massachusetts Constitution provides:

"All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

1. The background of the case is as follows. By letter dated November 18, 2003, Senator Jacques submitted her resignation to the Senate President. The letter stated, in pertinent part:

> "I hereby irrevocably resign from my position as State Senator for the Norfolk, Bristol, [and] Middlesex district as of 11:59 p.m. on January 4, 2004. I will assume my responsibilities as the new President and Executive Director of the Human Rights Campaign on January 5, 2004."[3]

That same day, November 18, 2003, the Senate passed an order that "irrevocably" accepted Jacques's resignation, and set March 2, 2004, as the date for the special election to fill Jacques's office. The order stated:

> "Ordered, That by the authority of article IV of section II of chapter I of the Constitution, the Senate irrevocably accepts the resignation, dated November 18, 2003 and effective January 4, 2004, of Cheryl A. Jacques as senator from the Norfolk, Bristol, and Middlesex district, and declares that, by reason of this resignation, the office of senator from that district is vacant as of January 4, 2004. By the authority of article XXIV of the Amendments to the Constitution, the Senate directs the president of the Senate to issue a precept setting forth March 2, 2004 as the day for holding an election to fill the vacancy in the Norfolk, Bristol, and Middlesex district . . . ."

The presidential primary will be held in Massachusetts on March 2, 2004. There is an incumbent running in the Republican presidential primary, but not in the Democratic presidential primary. The Secretary of the Commonwealth has taken steps necessary to hold the special election on March 2, 2004.[4]

On November 24, 2003, the chairman of the Massachusetts Republican Party stated to the media that unless the Senate

---

[3] By holding her seat through January 4, 2004, Senator Jacques earned credit for a full year of State service toward her pension benefits. See G. L. c. 32, § 4 (1) (*a*).

[4] We entered the order of January 7, 2004, in recognition of the fact that ballot printing for the February 3, 2004, primary election for the Norfolk, Bristol, and Middlesex Senate district needed to commence by January 9, 2004, in order to allow absentee ballots to be mailed and returned with sufficient time to be counted.

withdrew its order, the party would challenge the order. He also urged Senator Jacques to resign effective immediately. The Senate has taken no further action on the matter, leaving its order in effect. Senator Jacques did not resign immediately.

2. The addition of Scott P. Brown, a Wrentham resident and Republican candidate in the special election to replace Senator Jacques, as a plaintiff, see note 1, *supra*, obviates the need to deal with the standing issue raised by the defendant. See *Ginther v. Commissioner of Ins.*, 427 Mass. 319, 322 (1998).

3. We reject the plaintiffs' argument that the Senate acted unconstitutionally in issuing its order at a time when no vacancy yet existed. Contrary to the plaintiffs' contention, Senator Jacques's resignation was not merely an "expression of intent." Rather, her resignation (although its effective date was prospective) became final once the Senate, on November 18, 2003, irrevocably accepted it. Cf. *Warner v. Selectmen of Amherst*, 326 Mass. 435, 438 (1950) (concluding that once resignation was accepted, "the rights of the parties were determined, although the date when [the resignation] was intended to become effective [postdated the date on which the resignation was accepted]"). At the time the Senate acted in setting the date of the special election, Senator Jacques's seat was certain to be vacant as of 11:59 P.M. on January 4, 2004.

The plaintiffs argue that the plain language of art. 24 requires an "actual vacancy" before authorizing the Senate to act to fill a Senate seat, and that various other provisions in the Constitution concerning the filling of vacancies convey the requirement that an actual vacancy is first necessary. They conclude that, under the Constitution, the Senate could not act to fill Senator Jacques's vacancy until 11:59 P.M. on January 4, 2004. We disagree.

Article 24 provides: "Any vacancy in the [S]enate shall be filled by election by the people of the unrepresented district, upon the order of a majority of senators elected." This language does not expressly or impliedly require an actual vacancy, or a vacancy to have become effective, before the Senate orders a special election. Rather, art. 24 confers substantial discretion on the Senate. The language speaks not in particulars (or at all for that matter) concerning whether, and when, to issue an order

scheduling a special election, or what date to set for that election. See *Opinion of the Justices*, 368 Mass. 866, 874 (1975) (explaining that Legislature has "broad discretion to select the means" it will use in discharging its constitutional duties); *Attorney Gen.* v. *Brissenden*, 271 Mass. 172, 181 (1930) ("When a legislative body has a right to do an act, it must be allowed to select the means within reasonable bounds"). In accordance with the separation of powers principles expressed in art. 30 of the Massachusetts Declaration of Rights, we "should not infer specific constitutional procedures that the executive and legislative branches of government must follow," *Backman* v. *Secretary of the Commonwealth*, 387 Mass. 549, 555 (1982), and we should "be most hesitant in instructing the General Court when and how to perform its constitutional duties," *LIMITS* v. *President of the Senate*, 414 Mass. 31, 35 (1992). For these reasons, we conclude that the Senate's order did not violate art. 24. We also conclude that the Senate's order does not violate various statutory deadlines for conducting special elections because that argument presupposes erroneously that the Senate's order is invalid under art. 24.

A different conclusion is not required by reason of other Constitutional provisions, including Part II, c. 1, § 2, art. 4, of the Massachusetts Constitution which, until superseded by art. 24, provided a procedure for filling Senate vacancies "as soon as may be, after such vacancies shall happen"; art. 16 of the Amendments to the Massachusetts Constitution, which provided a procedure for filling vacancies on the Executive Council, requiring vacancies to be filled in the same manner as provided for filling vacancies in the Senate, and the amendment that superseded that provision, see art. 25 of the Amendments to the Massachusetts Constitution (authorizing Senate to fill vacancy "[i]n case of a vacancy" and "[i]f such vacancy shall happen . . ."); and Part II, c. 2, § 2, art. 3, of the Massachusetts Constitution, which relates to a gubernatorial vacancy and permits the Lieutenant Governor, "[w]henever the chair of the governor shall be vacant," to perform the Governor's duties. None of these provisions prohibits any preparatory action by the Senate to fill a vacancy that is certain to occur in the future, and in circumstances where the new public official would not

be seated and will not perform any duties until after the effective date of the vacancy.[5] The various provisions, including art. 24, do not create a "loophole" as the plaintiffs contend. They do assure in their aggregate that vacancies will be filled as soon as possible after their occurrence, thus maintaining, to the best extent possible, continuity of office (in this case, ensuring that the voters of Jacques's district are not left unrepresented for a lengthy period of time).[6]

4. The plaintiffs argue that the Senate's order violates art. 9 because it "impermissibly favored one political party over another." The plaintiffs' claim was originally predicated on "the common-sense intuition" and "obvious proposition" that, "in scheduling the special election at the same time as a hotly contested Democratic race, but a fairly uncontested Republican race . . . the special election . . . will favor Democrats over Republicans." Later, in their reply brief to the full court, the plaintiffs asserted that their position was supported by certain specified "[d]ata from the past two presidential primaries," data that were not presented to the single justice before the plaintiffs successfully moved to reserve and report the case. The data on which the plaintiffs rely are subject to varying interpretations. The matter in issue is left inconclusive. On this record, the plaintiffs have not satisfied their burden of proof demonstrating that the Senate's order violates art. 9.

---

[5]The same can be said about Rule 5B of the Rules of the Senate, which provides: "Upon a vacancy in the Senate, a date for a special election shall be scheduled within 14 days after the vacancy occurs unless the vacancy occurs after April 1 in an even-numbered year." The rule is to be read as consistent with the Senate's power under the Constitution. See *Portland Bank* v. *Apthorp*, 12 Mass. 252, 254 (1815).

[6]Our conclusion, upholding the Senate's order, is supported by decisions from other States deciding similar issues. Cf. *Allen* v. *Powell*, 42 Ill. 2d 66, 68-69 (1969) (concluding that Governor did not violate State Constitution, which permitted him to fill vacancies in legislature "[w]hen vacancies occur," in calling for special election before effective date of State senator's resignation); *McKenzie* v. *Edwards*, 361 So. 2d 880, 881 & n.1, 883 (La. 1978) (rejecting claim that Governor's action in calling for special elections to fill judicial vacancies on account of prospective resignations violated Constitutional provision authorizing Governor to fill judicial vacancies by special election held "within six months after the day on which the vacancy occurs," noting that "[w]hen the event is so certain to occur there is no legal impediment to anticipating the vacancies or the calling of the necessary elections to fill the vacancies when they become effective").