**Bruce AFRAN and Carl Mayer, Plaintiffs,**

v.

**James MCGREEVEY and State of New Jersey, Defendants.**

No. CIV.04–3912(GEB).

United States District Court, D. New Jersey.

Sept. 15, 2004.

Bruce I. Afran, Princeton, NJ, pro se.

Carl J. Mayer, Princeton, NJ, pro se.

### MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court upon Plaintiffs Bruce Afran and Carl Mayer's ("Plaintiffs") application for declaratory relief and mandatory injunction and Defendants James McGreevey and the State of New Jersey's ("Defendants") cross-motion to dismiss the Complaint.

## I. BACKGROUND

James McGreevey ("McGreevey") was duly-elected as Governor of the State of New Jersey at the November 2001 General Election for a four year term. He was sworn into office on January 15, 2002. (Certification of Donna Kelly) ("Kelly Cert."). The term of his office was set to expire on January 17, 2006. (Defs.' Br. at 3). In a public press conference held on August 12, 2004, McGreevey referred to "... an adult consensual affair with another man which violated my bonds of matrimony." He concluded:

> Given the circumstances surrounding the affair and its likely impact upon my family and my ability to govern, I have decided the right course of action is to resign. To facilitate a responsible transition, my resignation will be effective on November 15th of this year.

(Kelly Cert., Ex. C). On August 16, 2004, Plaintiffs filed a Complaint in this Court on behalf of themselves and all other registered voters and citizens in the State of New Jersey. On August 26, 2004, Plaintiffs filed an application for declaratory relief and an order to show cause. Plaintiffs sought a declaration that a vacancy existed in the office of Governor as of August 12, 2004, the date of the Governor's press conference. (Compl. at ¶ 19). Such a declaration would trigger a provision in the New Jersey State Constitution, Article 5, Section 1, Paragraph 9, which provides:

> In the event of a vacancy in the office of Governor, a Governor shall be elected to fill the unexpired term at the general election next succeeding the vacancy, unless the vacancy shall occur within sixty days immediately preceding a general election, in which case he shall be elected at the second succeeding general election; but no election to fill an unexpired term shall be held in any year in which a Governor is to be elected for a

full term. A Governor elected for an unexpired term shall assume his office immediately upon his election.

N.J. Const. art. V, § 1, ¶ 9. The next general election will be held on November 2, 2004, and since August 12th was more than sixty days prior thereto, Plaintiffs seek a mandatory injunction requiring the State to hold a special election in order to fill the office of Governor for the unexpired balance of McGreevey's term. (Compl. at ¶ 19) (Pls.' Br. at 5). Plaintiffs argue that Defendants' refusal to hold a special election denies New Jersey voters the right to elect the chief executive of the state. (Compl. at ¶ 14). Plaintiffs further argue that denial of a special election abridges their protected right to vote under the First, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983. (Compl. at ¶ 15).

Plaintiffs also refer to an article which McGreevey published in the New York Times on August 22, 2004, wherein he states in part:

> Much has been said about my decision not to resign immediately, but to set Nov. 15 as the effective date of my resignation. My initial inclination was to accept responsibility, apologize and move on quickly. The more I reflected, however, the more I realized that leaving office abruptly would be an abandonment of responsibility.
>
> I fully believe in the importance of elections within a participatory democracy. There can be no greater instrument for ensuring the strength and foundation of our system of government than the electoral process. Recognizing that principle, nonetheless, I can identify two specific reasons for choosing to remain governor until Nov. 15.
>
> First, there are immediate public policy considerations and actions, which need to be completed . . . .

(Certification of Bruce Afran) ("Afran Cert."). He continues five paragraphs later:

> The second major reason is that our 1947 state constitution establishes the Senate president as the official who would succeed a governor in an unexpired term. I acknowledge that the constitution would permit a special election to occur if I were to resign at or about the first week of September. But the constitution does not outline provisions or state requirements for the timing of a resignation. While the constitution does provide the mechanism for an election, the decision of when to make that resignation effective is a personal one.

(Afran Cert. Ex.)

On September 1, 2004, Defendants filed opposition to Plaintiffs' request for declaratory and injunctive relief, and also filed a cross motion to dismiss for failure to state a claim on various grounds. Plaintiffs filed their reply brief on September 7. This Court heard oral argument on the following day and thereafter took both motions under consideration. Both sides ably briefed and argued their respective positions. The facts do not appear to be disputed. Their argument is one of law.

The Court stated that it would announce its decision at 11:00 a.m. on September 15, 2004. In order to expedite resolution of this matter, the Court ruled from the bench pursuant to L. Civ. R. 52.1, and indicated that a written version would follow at a later time. This is that written version which constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 and 65.

## II. DISCUSSION

The "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Ctr. Inc. v. Gen. Mo-*

*tors Corp.,* 847 F.2d 100, 102 (3d Cir.1988) (citation omitted); *see also E.B. v. Poritz,* 914 F.Supp. 85, 90 (D.N.J.1996) (noting "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction."), *rev'd on other grounds,* 119 F.3d 1077 (3d Cir.1997). If this were an application for preliminary injunctive relief, this Court would consider four factors in determining whether to grant the motion:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir.1994) (citations omitted).

However, as clarified at oral argument, Plaintiffs seek permanent mandatory relief. Therefore, Plaintiffs must in fact succeed on the merits. (*See Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). The Plaintiffs do not seek a temporary or preliminary injunction to preserve the status quo. Instead they seek the ultimate relief sought, declaratory and injunctive relief directing the State to call a special election which it asserts that its Constitution allows.

■■■ As Plaintiffs have brought this action in federal court, we must first examine the federal constitutional basis of their claim. One of the cases Plaintiffs rely on is *Duncan v. Poythress,* 657 F.2d 691 (5th Cir.1981). That case considered whether state officials violated a state special election statute, and if so, whether such violation constituted a deprivation of federally protected rights. *Duncan,* 657 F.2d at 700. While under the Eleventh Amendment a federal court may not order a state official to comply with state law, *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the United States Constitution provides independent protection against patent and fundamental unfairness in the electoral process. *Duncan,* 657 F.2d at 703–04. The due process clause of the Fourteenth Amendment would be violated if state officials were to disenfranchise voters in violation of state law by failing to hold an election mandated by state law. *Id.* at 704. Thus, we reject Defendants' argument that the Complaint should be dismissed as not justiciable based on the Eleventh Amendment.

■■ Defendants also assert that the matter is a political question that is not justiciable. However, where one is seeking vindication of a clear legal right under the Constitution, the courts are empowered to declare and enforce such right. Indeed, the authority upon which Plaintiffs rely stands persuasively for this proposition. *Duncan,* 657 F.2d 691.

■■ The question then turns on whether state law, in this case the New Jersey Constitution, requires a special election by reason of McGreevey's statements. More specifically, the issue is whether there is "a vacancy in the office of Governor" as contemplated by Article 5, Section 1, Paragraph 9.

While Plaintiffs concede that the "plain language" meaning of vacancy would be an actual "physical vacancy" (Pls.' Br. at 5) or "empty place" (Pls.' Reply at 19), they argue for an alternative interpretation beyond the "plain language" or "literal meaning" of the state constitution, (*id.* at 21), in order to favor voting and elections as a matter of state public policy. However, in the *Duncan* case, the Fifth Circuit said, "[a] basic canon of statutory construction

is that words should be interpreted in accordance with their plain and ordinary meaning unless a clear contrary legislative intention is shown." 657 F.2d at 698 (citing *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980)). Reviewing the Georgia special election statute, the court reiterated that "[a] statute should normally be interpreted in accordance with the plain meaning of its language." *Id.* at 705. The Court will therefore examine the plain language meaning of the word vacancy because it is on this word that Plaintiffs posit their case. Black's Law Dictionary (8th ed.2004) defines vacancy as follows:

> vacancy ... 1. The state or fact of a lack of occupancy in an office, post, or piece of property ... 2. The time during which an office, post, or piece of property is not occupied. 3. An unoccupied office, post, or piece of property; an empty place. Although the term sometimes refers to an office or post that is temporarily filled, the more usual reference is to an office or post that is unfilled even temporarily. An officer's misconduct does not create a vacancy even if a suspension occurs; a vacancy, properly speaking, does not occur until the officer is officially removed.

Black's Law Dictionary (6th ed.1990) defines vacancy as follows:

> Vacancy. A place or position which is empty, unfilled, or unoccupied. An unoccupied or unfilled post, position, or office. An existing office, etc. without an incumbent. The state of being destitute of an incumbent, or a proper or legally qualified officer. The term is principally applied to an interruption in the incumbency of an office, or to cases where the office is not occupied by one who has a legal right to hold it and exercise the rights and perform the duties pertaining thereto. The word "vacancy," when applied to official positions, means, in its ordinary and popular

sense, that an office is unoccupied, and that there is no incumbent who has a lawful right to continue therein until the happening of a future event, though the word is sometimes used with reference to an office temporarily filled.

The Merriam–Webster Online Dictionary (2004) definition of vacancy includes the following:

> vacancy ... 3 a: a *vacating* of an office, post, or piece of property b: the time such office or property is vacant; 4: a *vacant* office, post, or tenancy; 5: empty space

The word "vacant" is also defined in the same dictionary as:

> vacant ... 1: not occupied by an incumbent, possessor, or officer <a vacant office ... 2: being without content or occupant ...

These definitions of the word vacancy are entirely consistent with its use in Article 5, Section 1 of the New Jersey Constitution of 1947. Paragraph 6 provides:

> In the event of a vacancy in the office of Governor resulting from the death, resignation or removal of a Governor in office, or the death of a Governor-elect, or from any other cause, the functions, powers, duties and emoluments of the office shall devolve upon the President of the Senate, for time being and in the event of his death, resignation or removal ....

N.J. Const. art. V, § 1, ¶ 6. Paragraph 8 distinguishes a deemed or constructive vacancy from an actual vacancy and requires a determination of the former by the New Jersey Supreme Court:

> Whenever a Governor-elect shall have failed to qualify within six months after the beginning of his term of office, or whenever for a period of six months a Governor in office, or person administering the office, shall have remained con-

tinuously absent from the State, or shall have been continuously unable to discharge the duties of his office by reason of mental or physical disability, the office shall be deemed vacant. Such vacancy shall be determined by the Supreme Court upon presentment to it
. . . .

■ Based on the undisputed facts here, it is clear that no actual vacancy exists. In order to grant Plaintiffs' request for a declaration that a vacancy exists and the State must hold a special election, this Court would be required to construe the term "vacancy" beyond its plain meaning. Currently, the office of Governor is not "empty" or "unoccupied." McGreevey continues to act as Governor. As he stated in his speech, he clearly intends to hold office until November 15, 2004. Under the plain language of the term vacancy, Article 5, Section 1, Paragraph 9 is not triggered and the requirement of holding a special election does not arise. Absent this right to vote, Plaintiffs fail to demonstrate a denial of federal constitutional rights. Accordingly, Plaintiffs' request for injunctive relief is denied and Defendants' motion to dismiss is granted.

While Plaintiffs argue that we should reject a "plain language" interpretation, as noted above, the United States Supreme Court and Court of Appeals for the Third Circuit disagree. (*See Apfelbaum,* 445 U.S. at 121, 100 S.Ct. 948) (*see also Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); *United States v. One "Piper" Aztec "F" De Luxe Model 250 PA 23 Aircraft Bearing Serial No. 27–7654057,* 321 F.3d 355 (3d Cir.2003); *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001)). While one might argue that general rules of statutory construction may be relaxed in the case of constitutional interpretation, any decision whether to depart from or disregard the clear language of a state constitutional provision to

effectuate claimed state public policy would be best left to the state courts—the body charged with interpreting it. This Court in determining whether a federal right has been violated will follow the plain meaning of the state constitution.

Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) must be granted because, accepting all well pleaded allegations in the Complaint as true, and viewing them in the light most favorable to Plaintiffs, Plaintiffs simply are not entitled to relief. *See Oran v. Stafford,* 226 F.3d 275, 279 (3d Cir.2000); *Langford v. City of Atl. City,* 235 F.3d 845, 850 (3d Cir.2000); *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986). Plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The facts are undisputed and the New Jersey Constitution on its face does not support Plaintiffs' position.

As noted above, Plaintiffs argue for a different definition of vacancy, asserting that "New Jersey's courts have time and again demonstrated that the plainest and most specific statutes and constitutional provisions are to be set aside or expanded in favor of enhancement of voting and elections." (Pls.' Reply at 25). At the same time they further assert that "[t]here is nothing uncertain or unsettled about the judicial policy that would require resort to the state courts." *Id.* However, elsewhere in the same brief, they assert that they have expressly avoided seeking relief in the state courts because those courts "are burdened with an immense conflict of interest" and presumably would therefore be reluctant to rule in Plaintiffs' favor. (Pls.' Reply at 12, n. 3). Thus, Plaintiffs simultaneously argue: 1) that the meaning of the word vacancy is not ambiguous; 2) that it should be interpreted contrary to its plain meaning; and 3) that they fear

the state courts might not accept this alternative interpretation. Such a circular position must be rejected, and this Court has indeed rejected it.

However, even if this Court were to entertain this alternative interpretation of the word vacancy as viable, we would then be faced with precisely the ambiguity and possibility of alternative interpretation which would counsel abstention. The state courts might consider the persuasiveness and applicability of the decisions from four other states which Plaintiffs have referred to. (Pls.' Reply at 20) (citing *Wyler v. Sec'y of the Commonwealth*, 441 Mass. 22, 802 N.E.2d 1042 (2004); *Spector v. Glisson*, 305 So.2d 777 (Fla.1974); *McKenzie v. Edwards*, 361 So.2d 880 (La.1978); *Allen v. Powell*, 42 Ill.2d 66, 244 N.E.2d 596 (1969)). In each of those cases, the state court had before it a written resignation which it deemed irrevocable as opposed to a statement of future intent in a press conference. To interpret vacancy to include an office still occupied whenever the occupant expresses an intent to vacate at some future date would create a number of new issues. Would the intent have to be in writing or merely oral? What circumstance could preclude retraction? How does it become irrevocable? If the plain meaning is to be discarded in favor of a public policy, however laudable, this would be a matter of paramount state interest and best left to the state courts.

■ As set forth in *Railroad Commission of Texas v. Pullman Co.*, federal court abstention is appropriate when the court is faced with both an unsettled issue of state law and a federal constitutional issue, such that resolution of the state issue in a particular way may narrow or eliminate the federal issue. 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Three criteria must be met for a federal court to abstain under *Pullman*:

1) there must be uncertain issues of state law underlying the federal constitutional claims brought in the federal court ... 2) these state law issues must be amenable to an interpretation by state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims, and 3) it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies.

*D'Iorio v. County of Del.*, 592 F.2d 681, 686 (3d Cir.1978); *see also Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir.1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

Plaintiffs suggest that setting aside the plain meaning and equitably expanding the definition of vacancy is the obvious and correct resolution. This Court disagrees with Plaintiffs' argument. However, even if we were to accept Plaintiffs' position, a dispute between the plain meaning and a different reading based upon perceived public policies would create an uncertainty, and the first requirement of *Pullman* abstention would be satisfied.

The second requirement would also be met. If the New Jersey state courts were to adopt the plain meaning definition of the term vacancy, the need to adjudicate Plaintiffs' constitutional claims would be obviated because the right to vote in a special election does not arise.

Likewise, the third requirement would be satisfied. An erroneous ruling by this Court would likely disrupt important New Jersey state policies regarding elected officers. This Court's ruling would have a direct effect on the ability of the elected officer to govern, to resign, and to leave office. Moreover, an erroneous ruling would greatly impact the perceived stability of the office of Governor. It is certain

that a ruling from this Court would have immediate and significant effect upon the State of New Jersey and its citizens.

For the court to set aside or expand specific constitutional provisions (Pls.' Reply at 25) in pursuit of perceived state public policies, as Plaintiffs wish us to do, would engender the needless friction with state policies which the abstention doctrine seeks to avoid. However, as stated above, this Court has not deviated from the plain meaning of the word and has found no ambiguity. Therefore this Court will not abstain.

## III. CONCLUSION

For the foregoing reasons and those set forth on the record on September 15, 2004, Plaintiffs' motion is denied and Defendants' motion is granted. An appropriate form of order was filed on September 15, 2004.

## ORDER

IT IS ORDERED THIS 15th day of September, 2004 that, for the reasons set forth on the record this date as may later be revised pursuant to L. Civ. R. 52.1; and which reasons constitute this Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 and 65, the Plaintiffs' motion for an order declaring the office of Governor to be vacant and for a mandatory final injunction requiring the holding of a special election for said office on November 2, 2004 is DENIED; and it is further

ORDERED that Defendants James McGreevey and the State of New Jersey's cross-motion to dismiss for failure to state a claim is GRANTED; and it is further

ORDERED the Clerk is hereby directed to close this case.